People of the State of Illinois, Plaintiff-Appellee,
v. David Finney, Defendant-Appellant.

Gen. No. 50,958.

First District, Fourth Division.

October 16, 1967.

Gerald W. Getty, Public Defender of Cook County (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendant, David Finney, in Count I of the indictment was charged with the crime of burglary,[1] and in Count II with the possession of burglary tools.[2] The jury returned verdicts of guilty on both counts, and on September 9, 1965, the court sentenced the defendant to the penitentiary for five to seven years on Count I, and for five to seven years on Count II, the sentences to run concurrently. The evidence shows the following uncontradicted facts:

On January 16, 1965, between 8:25 and 9:00 a. m., Mrs. Jane Schumpert left her apartment at 1137 Oak Avenue in Evanston, Illinois, to drive her husband to classes at Northwestern University. She returned about

---

[1] Ill Rev Stats 1963, ch 38, § 19–1. Burglary.] (a) A person commits burglary when without authority he knowingly enters into, or without authority remains within a building, house-trailer, watercraft, aircraft, railroad car, or any part thereof, with intent to commit therein a felony or theft.

[2] Ill Rev Stats 1963, ch 38, § 19–2. Possession of Burglary Tools.] Whoever possesses any key, tool, instrument, device, or any explosive, suitable for use in breaking into a building, house-trailer, watercraft, aircraft, railroad car, or any depository designed for the safekeeping of property, or any part thereof, with intent to enter any such place and with intent to commit therein a felony or theft shall be imprisoned in the penitentiary from one to 2 years.

fifteen minutes later, unlocked the door and entered the apartment. As she was hanging her coat in the closet near the front door she realized she was not alone; when she turned around suddenly and saw a strange man standing near her she fainted. She testified that before she fainted she noticed that the man wore a dark jacket and a cap with a bill on the front. When she regained consciousness the man was bending over cautioning her to be quiet, whispering "Shhh, be quiet," but she screamed loudly, and when sounds from the apartment above indicated that someone had heard her scream, the man left. Mrs. Schumpert immediately notified the Evanston police, and when they arrived their investigation revealed scratches on the door, indicating that entry had been made by a method known as a "case-knife job," with an object such as a knife being forced between the door and the frame.

Further testimony introduced by the State was that of two women who lived in the same court building as Mrs. Schumpert, who saw a man they identified as the defendant passing through the courtyard. Mrs. Helen Baillie testified that she was washing clothes in the basement when she saw the defendant go through the court which faced the rear of the Oak Street building; that he was wearing a brown leather jacket with a fur collar and wearing an olive green cap. Mrs. Mary Van Mensbrugge stated that she was sweeping snow from the rear porch of the building in which she lived when she noticed the defendant passing through the courtyard beneath her windows, moving from the direction of Oak Street towards Maple. Her description of his clothing was the same as that of Mrs. Baillie.

Based on a description sent out over police radio, two Evanston police officers apprehended the defendant as he was walking several blocks from the scene of the burglary, and they took him in the squad car to 1137 Oak. After arriving there the officers were putting

handcuffs on the defendant when a knife with a bent blade fell from the sleeve of his jacket. It did not fall to the ground, and the defendant bent his wrist to push it back up his sleeve. The police officer then took possession of the knife. He later testified that he had seen such knives used to slip between the wood on a door and bent so that by turning it the door could be unlocked. There was also testimony that this knife was turned over to another officer who fitted it to the scratches on the door and frame of the Schumpert apartment, and found it to be of the same general size of the instrument used to gain entrance.

The defendant was identified at the Evanston Police Station by both Mrs. VanMensbrugge and Mrs. Baillie, at which time he was alone and not in a lineup.

Officer Charles Kipferl testified that on January 16, 1965, while he was working with Officer Donald Washington, they received a radio description of "a colored youth with a knit jacket or sweater"; that the next message gave a description of "a colored man or Negro man with a brown leather jacket with a fur collar and a cap."

A stipulation was entered into between the State and the defendant that at a preliminary hearing Mrs. Van Mensbrugge stated that she did not recall whether or not the defendant was wearing glasses when he passed beneath her in the courtyard.

Mrs. Schumpert was taken to the Evanston Police Station to make an identification; she also testified that on the afternoon of the same day she discovered that a cedar chest in her apartment had been opened and damaged, but that nothing was missing from it, nor was anything missing from her apartment. When she went to the station to make the identification the defendant was placed behind a screen and was asked to repeat the words, "Sh, be quiet" about 20 to 40 times. She stated

that he spoke the words loudly rather than in a whisper as they had been spoken in her apartment, and that one of the officers told the defendant to lower his voice. When he did so Mrs. Schumpert identified the voice as that she had heard in her home. The defendant here argues that the identification of his voice was not a proper or sufficient identification.

The defendant did not testify. He contends in this court that he was not proved guilty beyond a reasonable doubt, and that he did not have a fair trial. He argues (1) that the court erred in permitting the introduction of testimony by the complaining witness regarding the identification of the defendant from hearing his voice at the police station; (2) that the arguments of the prosecutor misled the jury; and (3) that the court refused to give an instruction proffered by defendant on circumstantial evidence.

OPINION:

■■ 1. The defendant bases his argument on Palmer v. Peyton, 359 F2d 199, in which case Judge Sobeloff stated that the identification of the defendant by his voice was improper. In that case the only testimony introduced upon which the defendant could properly be convicted was the voice identification. The situation in the case before us is much different. It has been held by both the Appellate Court and the Supreme Court that a defendant may properly be identified by his voice. Also see 2 Wigmore, Evidence (3rd ed) § 660; 1 Wharton, Criminal Evidence (12th ed) § 183. In Ogden v. People, 134 Ill 599, 25 NE 755, the court said at page 601:

"The statement by the witnesses for the prosecution of a fact which they ascertained through the sense of hearing was not the statement of mere matter of opinion, but the statement of a conclusion reached directly and primarily from an opera-

208

tion of the sense of hearing. A witness can learn and know facts by and through the exercise of his perceptive faculties,—his five senses,—and such facts he may state. (City of Aurora v. Hillman, 90 Ill 61.) It was a question of fact for the determination of the jury whether or not the testimony in question sufficiently established the matter of identification, . . ."

In People v. Barry, 371 Ill 463, 21 NE2d 561, it was held that the manner of identifying a defendant goes only to the weight of the identification evidence, and People v. Nichols, 378 Ill 487, 38 NE2d 766, is in accord. The same rule is laid down in People v. Thompson, 406 Ill 555, 94 NE2d 349. In the instant case the identification of the defendant by his voice was proper.

■ The defendant also urges that the identification was improper since it was not conducted in a lineup. In People v. Snell, 74 Ill App2d 12, 219 NE2d 554, Mr. Justice English stated at page 22:

"It certainly is preferable to have a witness, independently, identify the guilty party from among a group of unknown persons. People v. Sanders, 357 Ill 610, 622, 192 NE 697. However, failure to follow this practice goes only to the weight of the evidence and is not necessary."

It has been repeatedly held that the manner in which an identification is made goes only to the credibility and weight to be accorded it and not to its admissibility. People v. Thompson, supra; People v. Barry, supra; and United States v. McCartney (7th Cir) 264 F2d 628.

Two witnesses, Mrs. VanMensbrugge and Mrs. Baillie, placed the defendant at the scene of the crime and described his dress as it was described by the complaining witness. Of course, it is true that the mere placing

of the defendant at the scene of the crime, standing alone, would not be sufficient to convict, but such is not the situation here.

■ The defendant also attacks the credibility of the two State's witnesses. It has long been held that a question of credibility is peculiarly within the province of the jury who had the opportunity to hear all of the testimony presented; and that after the trial where a judge has refused to disturb the verdict a court of review will not ordinarily substitute its judgment upon appeal. People v. Kirilenko, 1 Ill2d 90, 115 NE2d 297, and People v. Delorenzo, 300 Ill 124, 132 NE 783.

2. The defendant objects to the argument of the prosecutor. However, when the prosecutor's argument is considered in connection with the argument of the defendant, the point made loses all meaning. The defendant argued first:

> "There isn't any evidence from David Finney. He did not testify. Under the law the defendant is not required to testify, under the law he is not required to prove his innocence, under the law the State's Attorney is required to prove his guilt beyond all reasonable doubt and you, as jurors, are under your oath not to consider his failure to testify at all and certainly not to consider his failure to testify as creating any inference of guilt, but more than that, David Finney didn't have to testify because David Finney pleaded not guilty and the plea of not guilty in this state denies every material allegation of the indictment, he denies it by his plea of not guilty.
>
> "Now if he testifies what more would he say, he would deny it, presumably, but he has already denied it by his plea of not guilty."

■ The Assistant State's Attorney, in attempting to answer defendant's argument, said that counsel for defendant had made the following statement:

"He says Mr. Finney—and I would not comment on this ordinarily—Mr. Finney, if he took the stand, would presumably deny it, however, we don't know if Mr. Finney would deny it or what Mr. Finney would say to subject himself to cross examination, and I'm allowed fair comment on that because counsel said he would deny it, I would be interested to know what Mr. Finney would say subject to cross examination."

An objection was then made which was overruled by the judge. In support of his objections to the State's Attorney's argument the defendant cites People v. Weinstein, 35 Ill2d 467, 220 NE2d 432. However, that case is not applicable under the situation which developed in this trial. The remarks of defendant's counsel were of a character which could properly require the answer which was made by the State.

3. The defendant here argues that the court refused to give an instruction proffered by him on circumstantial evidence. After a careful reading of the instructions given by the court we reached the conclusion that the jury was properly instructed.

■ The State admits that the court erred in the sentence of the defendant. Under Count I of the indictment the defendant could have properly been sentenced to the penitentiary for not less than five nor more than seven years. Under Count II of the indictment and a finding of guilty of possession of burglary tools, the defendant could have been sentenced only from one to two years. Under those circumstances, this court will modify the sentence under Count II and reduce it to a

period of one to two years, which sentence is to run concurrently with that under Count I of the indictment.

The judgment of the Circuit Court as to Count I of the indictment is affirmed; and as to Count II is affirmed as modified above.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.