**People of the State of Illinois, Plaintiff-Appellee, v. Ronald Chellew, Defendant-Appellant.**

**Gen. No. 68–45.**

Second District.

December 27, 1968.

Rehearing denied January 23, 1969.

John Vogel, Public Defender, of Glen Ellyn, and Edwin L. Douglas, Public Defender, of Wheaton, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Kevin P. Connelly and Frank Wesolowski, Jr., Assistant State's Attorneys, for appellee.

JUSTICE MORAN delivered the opinion of the court.

The defendant appeals from his conviction on three counts of an indictment charging indecent liberties with a child, in violation of section 11–4 of the Criminal Code (Ill Rev Stats 1965, c 38, § 11–4).

The defendant is nineteen years of age. He and four other young men, Patrick Gibson, Michael Gibson, James Owen and Bill Levy, all over the age of seventeen, picked up two fourteen-year-old high school girls in Lisle, Illinois, and took them by automobile to the home of the Gibson brothers in Villa Park. There, Patrick Gibson had sexual intercourse with each of the girls, and the appellant

Chellew engaged in an act of deviate sexual conduct with one of them. Under the statute, indecent liberties is defined as any act of sexual intercourse or any act of deviate sexual conduct committed by a person over the age of seventeen with a child under the age of sixteen.

There was substantial evidence adduced to show that Chellew not only engaged in the act of deviate sexual conduct with one of the girls, but that he aided and abetted Patrick Gibson in the acts of sexual intercourse committed by Gibson. For instance, the uncontradicted evidence indicates that the defendant carried one of the girls into a room where Gibson was, that he restrained one of the girls when she attempted to go to the other girl's assistance at one point, that he threatened the girls with violence if they told anyone what had happened, and that he had participated in the decision which was made to pick up the girls in the first place. In short, the evidence was sufficient to show that Chellew participated fully in the events which led to and facilitated the acts of intercourse engaged in by Gibson.

 Defendant's first point concerns the sufficiency of the indictment. Count I charged the defendant, both Gibsons, Owen and Levy with indecent liberties in that they "performed an act of sexual intercourse" with one of the girls. Count II charged the same persons with indecent liberties in that they performed an act of deviate sexual conduct with the same girl. Count III charged the same defendants with indecent liberties in that they performed an act of sexual intercourse with the other girl. Defendant's argument is that Counts I and III of the indictment are defective as to him, in that he was charged as a principal rather than as an aider and abettor. There is no merit to this point. People v. Touhy, 31 Ill2d 236, 201 NE2d 425 (1964).

Defendant's next point is that there was not enough "corroboration" of the testimony of the two fourteen-year-old girls to support his conviction. He argues that

in certain respects the testimony of the girls was implausible and inconsistent. The "corroboration" of their testimony was furnished by the codefendant James Owen, who testified for the State. In general, his version of the matter was the same as that given by the two girls.

■ There is nothing so implausible or inconsistent about any of the evidence that we can say, as a matter of law, that there is a reasonable doubt of the defendant's guilt. The weight of the evidence was for the jury to determine, and our review of the record leads us to the conclusion that the evidence was sufficient to support the verdict.

Defendant's next point is that his sentence of 9 to 14 years is disproportionate to the sentence of 3 to 4 years imposed upon the codefendant Patrick Gibson, who pleaded guilty. Defendant argues that he was penalized for going to trial, inasmuch as he received a sentence three times as long as that imposed upon Gibson who, according to defendant, was the "prime mover in the entire occurrence."

The statute provides for a penalty of from 4 to 20 years. It appears from the record that, at the time of the offense, the defendant was on parole from the penitentiary, having previously been convicted of the crime of burglary and having served one year of a one to three year sentence in the penitentiary. Insofar as this record shows, Patrick Gibson had no previous criminal record. Therefore, this is one difference which would justify a difference in sentencing. Secondly, we do not believe the record supports the conclusion that defendant was substantially less culpable than Patrick Gibson. While Gibson had intercourse with each of the girls, defendant facilitated those acts and committed an act of deviate sexual conduct on his own. Furthermore, he threatened the girls with violence, and, according to the evidence, stated that one of their brothers would be killed if they divulged what had happened.

■ We are also impressed by the fact that Michael Gibson, who went to trial along with appellant, and whose participation had been solely that of an aider and abettor, was given a sentence of 7 to 14 years. It appeared that Michael Gibson was also on parole for burglary at the time of this offense. Thus, it appears to us that, as between the appellant and Michael Gibson, the sentences were proportionate to their participation in the offense, and that, as between Michael Gibson and appellant on the one hand, and Patrick Gibson on the other, the court could properly distinguish on the basis of their previous records. We conclude that there was no error in the sentencing of defendant.

Defendant's final point is that the prosecution improperly commented upon his failure to testify, in violation of section 155-1 of the Criminal Code (Ill Rev Stats 1965, c 38, § 155-1) which provides that a defendant's "neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

The comment in question was made by the Assistant State's Attorney in his rebuttal argument, after counsel for the appellant and the codefendant Michael Gibson had argued that the defendants could reasonably have believed that the girls were over sixteen years of age. This issue arose because the indecent liberties statute provides that it shall be an affirmative defense that "the accused reasonably believed the child was of the age of sixteen or upwards at the time of the act giving rise to the charge." (Ill Rev Stats 1965, c 38, § 11-4(b) (1).) The defense had offered into evidence certain photographs which had been taken of the two girls at their school prior to the date of the offense. Although these pictures are not a part of the record before us, we gather from the record we do have that the girls, at least in the view of the defense attorneys, could have been mistaken for sixteen from their appearance in the pictures. At the trial, on the

104

other hand, it appears that the girls were dressed and made up in a way that was more consistent with their actual age of fourteen. There was considerable cross-examination by the defense attorneys concerning the fact that, at the time of the offense, the girls were wearing makeup, silk stockings, and the like, whereas, at the trial, they were not.

The incident in question, which occurred during the Assistant State's Attorney's rebuttal argument, was as follows:

"You are also going to be told, and defense counsel mentioned this to you, what the affirmative defense is to this charge. I believe you will be told that the affirmative defense is that the defendants, the accused, reasonably believed the ages of the girls in this case involved to be 16 or upwards. That's the law.

"Where in the evidence do they show what their belief was at all as to the ages of these girls? Where in the evidence do they show that this belief that they had was reasonable? Where is the evidence? Are they going to say on the basis of these two pictures that they never saw—they never saw these pictures. There is no evidence from that witness stand that told you either one of these two defendants ever saw these pictures. These pictures are valueless. They are worthless. Assuming that they did see the pictures, and there is no basis for that assumption, did anybody tell you that the accused based their belief on the pictures? Did you hear anything like that from the witness stand? What confuses me is that I don't know if they say they reasonably believed it. I didn't hear them say that. I didn't hear—"

"MR. LANG: Objection, your Honor.

"MR. BAILEY: Objection, your Honor.

"This is most improper.

"THE COURT: The objection is sustained."

Defense counsel then made timely motions for a mistrial and these motions were denied.

The remark, "I didn't hear them say that," coming right after "Did you hear anything like that from the witness stand?" can, in our judgment, be interpreted in only one way. It is an express statement by the prosecutor that he did not hear the defendants state from the witness stand that they reasonably believed the girls to be over sixteen years of age. This is a direct, unambiguous reference to the defendant's failure to testify.

The People do not contend otherwise. Their entire argument on this point is as follows:

"The People submit that such argument does not overreach the bounds of proper argument as set in People v. Mills, 40 Ill2d 4, 237 NE2d 697 (1968)."

We do not find this statement helpful. In the Mills case, the defendant was charged with unlawful possession of narcotics. A package containing heroin was found under a barstool occupied by defendant at the time of his arrest, and a prosecution witness testified that he had seen the defendant place the package there. The defendant did not testify. In his closing argument, the prosecutor pointed out that no one who was in the bar at the time of the occurrence contradicted the testimony of the prosecution witness. On appeal, it was contended that this was a reference to the defendant's failure to testify. The Court, at page 8, observed that:

"An appropriate test in deciding whether such closing argument violated the defendant's right to remain silent under Section 155–1 of the Code of Criminal Procedure was set out in Watt v. People, 126 Ill

106

9, 32, as whether 'the reference (was) intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify?' "

The Court then reviewed several cases in which the comment of the prosecutor had been held improper, and concluded that, in such cases, ". . . the prosecutorial design appears to have been to point the finger of blame directly at the defendant for his failure to testify when it was within his power to enlighten the jury." The Court went on to hold that, since there were between eight and thirteen people in the tavern at the time of the defendant's arrest, ". . . (W)e cannot accept the defense contention that the prosecutor's argument that no one had controverted the State's principal witness constituted a covert reference to the defendant's failure to take the witness stand." (People v. Mills, supra, at pages 9 and 10.)

The instant case is clearly distinguishable from Mills, simply on the basis that the comment of the prosecutor here was an explicit statement that he had not heard the defendants testify. We do not understand how the People can claim the argument did not exceed the limits indicated in Mills. It seems to us that, on the contrary, the comment in question falls precisely within the category which Mills, and the cases cited therein, have indicated is proscribed.

In People v. Wollenberg, 37 Ill2d 480, 487–488, 229 NE2d 490 (1967), the prosecutor in his final argument to the jury mentioned all the witnesses who had testified and stated "No one else testified. Let's get that straight." The Court reversed the defendant's conviction, on the ground that:

". . . (I)t is apparent to us that the underlying purpose and the ultimate effect of the prosecutor's remarks was to call attention to the defendant's failure to testify, thereby accomplishing by inference

what could not be done expressly. As such, we hold that the statement in question constitutes plain error."

In the instant case, there was nothing left to inference. The prosecutor's statement was nothing less than an express reference to the defendant's failure to testify.

In People v. Asey, 85 Ill App2d 210, 218, 229 NE2d 368 (1967), a robbery case, the prosecutor commented to the jury that the defendant "doesn't explain anything about the property found on him; he never does later." The Court held that this statement by the prosecutor, in view of its context, was "only a reference to the four times Asey was questioned by the police. . . . The whole argument referred to the pretrial questioning and not the defendant's failure to testify." In the instant case, no such interpretation can be placed upon the remarks of the prosecutor. There was no time other than the time of trial that he could have "heard them say" that they believed the girls to be over sixteen years of age.

Furthermore, the comment of the prosecutor was not provoked by any argument of defense counsel, and the case is thus distinguishable from such cases as People v. Woods, 26 Ill2d 557, 562, 188 NE2d 1 (1963). Defense counsel did not argue that the defendants had ever seen the photographs of the girls prior to the date of the offense. Indeed, it was clear from the evidence that they had not. The purpose of the photographs was merely to show that the girls did not necessarily always look as young as they apparently did at the trial. Defense counsel merely argued that defendants could reasonably have believed the girls to be over age sixteen, and there was nothing about their argument which could justify a retaliatory comment on the defendant's failure to testify.

 Finally, we come to the question of what to do about the improper comment. It is unfortunate that the

comment was made. It may well be that it had no effect upon the outcome of the case. As we have indicated, the evidence was sufficient to support the verdict of the jury. However, there is no way we can know that the comment did not affect the result. From the cold record before us, we are unable to arrive at any judgment as to whether the jury regarded the case as a close one or not. Certainly, there is substance to some of the defendant's arguments about inconsistencies in the State's case. While, as we have indicated, we regard these matters as having been properly submitted to the jury for resolution, we have no basis for concluding that they could only have been resolved in one way. Accordingly, we believe the rule applicable to the case is as set forth in Austin v. People, 102 Ill 261 (1882), where referring to the statutory proscription against comment on the defendant's failure to testify, the Court stated at page 264:

> "We do not see that this statute can well be completely enforced, unless it be adopted as a rule of practice that such improper and forbidden reference by counsel for the prosecution shall be regarded good ground for a new trial, in all cases where the proofs of guilt are not so clear and conclusive that the court can say affirmatively the accused could not have been harmed from that cause."

The error was not cured by the fact that defendant's objection to the comment was sustained. People v. Cheney, 405 Ill 258, 90 NE2d 783 (1950).

Because of the improper comment upon the defendant's failure to testify, the judgment will be reversed and the cause will be remanded for a new trial.

Reversed and remanded.

DAVIS and SEIDENFELD, JJ., concur.