The People of the State of Illinois, Plaintiff-Appellee, *v.* Raymond Helm, Defendant-Appellant.

(No. 11823;

Fourth District—January 10, 1973.

Kenneth L. Gillis, of Defender Project, of Chicago, for appellant.

Basil G. Greanias, State's Attorney, of Decatur, (Jon C. Baxter, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The defendant-appellant, Raymond Helm, was jointly indicted with his half-brother, Kenneth Helm, for the crime of arson. The indictment charged that the defendants "* * * committed the crime of Arson, in violation of Chapter 38, Section 20—1(a), Ill. Rev. Stat. 1969, in that

they knowingly, and by means of fire, damaged the real property, owned by Joseph Michael and occupied by Emma Mares, at 2021 East Wood Street, City of Decatur, without his or her consent." Kenneth Helm is not involved in this appeal. Defendant Raymond Helm was tried before a jury, convicted and sentenced to an indeterminate term of 3 to 10 years.

The evidence may be summarized as follows: Joseph Michael owned the house in question and lived on the first floor. There was an outside stairway which led to a second floor apartment occupied by Emma Mares. Emma and Kenneth Helm were friends; he left clothes in her apartment from time to time and also mowed the yard at the Michaels residence. He kept a lawnmower in the garage at that address, and a one gallon gasoline can which he used to fill the lawnmower. Emma Mares was also acquainted with Raymond Helm (hereinafter referred to as "defendant").

Officer Bill Winston of the Decatur Police Department testified that he went to the Michaels residence on August 12, 1971, the day of the incident, at about 9:50 P.M. That there had been a fire, that the steps leading to the second floor apartment of Emma Mares had been damaged by the fire and that there was smoke damage all the way up the stairs and that there was a half full gasoline can sitting at the bottom of the stairs next to the house.

The witnesses Vording and Wright testified that they were sitting in the kitchen of the house next to the premises in question on the evening of August 12th, and heard what they thought to be an explosion or a door being slammed. Mrs. Vording looked out the window and saw the steps of the Michaels house burning. Vording used his garden hose in an effort to extinguish the fire. He saw a gasoline can near the stairs and stated that it had no lid on it. Vording testified that the fire was on the driveway, the side of the house and all the way up the staircase leading to the Mares apartment. Wright also saw the gasoline can sitting at the bottom of the stairs; he moved it away from the flames and testified "You could smell gasoline all around the place" and that the stairs were blazing when he arrived. He saw no cap on the gasoline can.

Officer Virgil Stolz of the Decatur Police Department, during his investigation, interviewed Raymond Helm. He testified that the defendant stated that his brother, on the day in question, told him that he had had an argument with his girl friend (Mares). That they drove to her house where defendant remained in the car. That Kenneth was gone for 15 minutes and had a gasoline can when he returned and stated he was going to mow the yard the following day. That they then bought some gas which was placed in the can. They returned to the Michaels house, the defendant carried the gasoline can around to the side of the house

and as he set the can down some gasoline spilled out and burst into flames. Stolz also testified that he asked defendant how the fire started but that "* * * he either couldn't or wouldn't explain to me as to how the fire started. He just said he set the can down and it burst into flames." He also testified that defendant maintained throughout the interview that he did not start the fire.

Emma Mares testified that when she got off work on August 12th, Kenneth was there and wanted her to go with him in his automobile. She refused. About 8:30 P.M., she saw Kenneth Helm and defendant drive up in front of her apartment. She turned the lights off because she didn't want them to come in. They knocked on her door for some time and she heard defendant say, "Let's break the door down." Defendant and Kenneth then left. After the fire department had existinguished the flames (somewhere between 9:00 and 9:30 P.M.), Emma went down the stairs and observed the gasoline can "all smoked up", it had a cap on it. She recognized the can as Kenneth Helm's. She picked the can up, it was about a quarter full and took it to the home of her daughter-in-law, Jackie Mares, where she left it on the back porch. Jackie Mares testified that Emma brought the gasoline can to her home; both witnesses identified the can.

Lonnie Gentry, an employee at a Shell gasoline station, testified that about 9:30 P.M., on August 12th, Raymond Helm bought some gas which was placed in a can. He then testified that he had selected a picture of the individual at the police station and had been given two names, that of defendant and of Kenneth Helm. That he was not sure which one bought the gas, that he did not see the individual in the courtroom. That the police told him the name of the person whose picture he selected.

Kenneth Helm was called as a witness for the People. Prior to defendants' trial he had entered a negotiated plea of guilty to criminal damage to property not exceeding $150 in value; the arson charge had been *nolle prossed* as to him. He had filed a petition for probation which had not been heard at the time of defendant's trial. It also appears from the record that before the trial and shortly after Kenneth Helm entered his plea of guilty, he was interviewed by the State's Attorney and by defendant's attorney (in the presence of one another). That Kenneth had previously given written statements to the State's Attorney and to police officers, and that the probation officer was present during part of the time the statement was taken by the police. That during the interview with Kenneth it developed that he was stating some matters inconsistently with prior statements he had made. It was then established in the record that the States Attorney told Kenneth Helm that he had a probation hearing pending, and that if his testimony at defendants trial were to

differ substantially from prior statements given to the police the probation officer would have the police statements and "* * * if he (the probation officer) felt that you had lied on the stand * * * he would not look with favor on your petition for probation. It also appears that, pursuant to the terms of the negotiated plea of Kenneth Helm he was to receive six months at Vandalia in the event probation was denied.

Kenneth Helm then testified as follows: On August 12th, he and defendant went to Valley's Tavern around noon and drank some beer. Kenneth then dropped defendant at the Fat Cat Tavern and went to see Emma Mares at her place of employment. He had earlier gone to the Michaels house and got the gasoline can and put it in the car. Kenneth returned to the tavern and they had some more beer. About 4:20 P.M., Kenneth and defendant went to the Mares apartment. They both went to the door. Kenneth knocked on the door and defendant jerked on the screen door and said that they should tear it down. They then went to the home of their sister-in-law and drank some more beer. They then left, purchased a 6 pack of beer and went to the home of Clarence Helm, a brother of Kenneth, and drank some more beer. This was at about 8 P.M. They left Clarence's house and defendant stated that they should do something to get even with Emma Mares for the way she had treated Kenneth. Defendant told Kenneth "* * * if I would get the gasoline that he would set the house afire". The witness then identified the gasoline can in question and testified that he and defendant had it filled with gasoline at the Shell Service Station. Kenneth then drove to a point three or four houses away from the Michaels house where he let defendant out with the gasoline can. He asked defendant to take the gasoline can to the Michaels residence and set it down by the garbage can. Kenneth then drove, alone, to the place where he and defendant had a sleeping room and this was but a short distance from the Michaels residence. Just as Kenneth arrived at his destination defendant ran up and said "* * * it was burning and the driveway was full of smoke * * *". Kenneth and defendant were lodged, for a time, in the same cell after they were arrested and during this period defendant stated to Kenneth that there was no cap on the gasoline can, some fire fell off his cigarette and the gasoline exploded.

■■ Defendant first urges that the People failed to prove a material element of the offense, namely that the value of the property destroyed exceeded $150. The essence of the argument is set forth in defendant's brief as follows: "It is readily apparent that a material element of the offense is that the value of the property damaged exceeded $150, for this is what distinguishes this offense (arson) from the misdemeanor or criminal damage to property with a value under $150. (Ill. Rev. Stat. 1969, Ch. 38,

148

Sec. 21—1(b))." He argues that the People failed to establish that the cost of repair to the house was in excess of $150. Defendant cites no case to support this allegation of error, and indeed the cases cited have no discernable connection except that they stand for the general proposition that all material elements of the offense charged must be proven. There is no merit to this contention, and for several reasons. Firstly, defendant misquotes the provisions of section 21—1(b) of the statute. It provides a penalty for reckless burning of property when the *damage* to the property exceeds $150. This section does not relate to the *value* of the property damaged. Secondly, the arson statute, under which defendant was indicted provides that a person commits arson when, by means of fire, he knowingly "Damages any real property, or any personal property having a value of $150 or more, of another, without his consent; * * *". The reference to the $150 limitation is clearly stated in the disjunctive and applies *not* to real property but only to personal property. Nor does the $150 limitation relate to the *amount* of damage done but rather to the *value* of the item damaged.

Defendant next urges that it was error to give to the jury People's Instruction No. 14, which was I.P.I. Cr. 24.02 and reads "An intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting knowingly". This instruction was not objected to by defendant in the trial court, but we will consider the problem by reason of the provisions of Supreme Court Rule 451(c).

■■ The thrust of defendant's argument is that there was no evidence of intoxication, that it was "not raised as an issue" and that defendant was prejudiced by the giving of the instruction in that the jury would "* * * surmise its one thing for a sober person to try a mischievous prank which backfired, and quite another for one to go out and get drunk, and then try to burn down someone's house." Defendant cites *People v. Jackymiak*, 381 Ill. 528, 46 N.E.2d 50, for the proposition that where no defense is presented on the grounds of intoxication it is error to instruct on the proposition. The Committee note appended to I.P.I. 24.02 advises that the instruction "* * * should be used only where some proof is introduced of defendant's intoxication * * *". Here there was a great deal of evidence adduced, both by the People and by the defendant on cross-examination, to the effect that defendant had drunk a considerable amount of beer during the afternoon and evening of the day in question. The record of the instruction conference establishes that when I.P.I. 24.02 was offered the State's Attorney stated that he would withdraw the instruction if defendant's counsel was not going to argue the question of intoxication. Defendant's counsel stated that he was not going to use intoxication as a defense but that he would argue that defendant

had been drinking all afternoon. This distinction is difficult to grasp. He also urged that if I.P.I. 24.02 was given then I.P.I. 25.02, the burden of proof instruction should include the element "That the defendant was then capable of acting knowingly" and this element was set forth in the instruction given. In final argument defendant's counsel stated to the jury that defendant was confused and didn't know how the fire started (apparently referring to defendant's statement made to Officer Stolz), that defendant "* * * panicked, he had been drinking. There was a gasoline fire he was not responsible for * * * the defendant may have carried the can up there. It was dark, he had been drinking. The evidence shows that he had been drinking." Under these circumstances it was not error to give the instruction in question.

Defendant next urges as error a statement made by the State's Attorney in his closing argument, contending that it was a comment on defendant's failure to testify. The defendant did not testify nor did he call a single witness in his behalf. The comment in question was as follows: "It is suggested here somehow or other you should dream up a defense for Raymond. *You will have to. He hasn't given you any. This record has not given you any.*" (Emphasis supplied.) The appellee insists that the foregoing was not a comment on defendant's failure to testify, but rather a "* * * reply to the defense counsel's theory of the case." The portion of defense counsel's argument, to which appellee maintains he was responding is set forth in the brief as follows:

> "Now the theory of innocence is a very logical one. It is consistent with the facts, and that is that the defendant may have carried the can up there. It was dark, he had been drinking. The evidence shows that he had been drinking. The evidence says there was no light at the back of the house. He set the can down where his brother told him to and that was by the garbage can. There was no reason for him to take it in the garage. Mrs. Mares said he didn't know where to put it in the garage. He set it down, it was dark, he spilled some gasoline. The gasoline was ignited and the can was setting admidst [sic] the fire."

■■ We do not view the quoted portion of the defense argument as inducing the comments of the State's Attorney. The evidence was clear that defendant had carried the gasoline can onto the Michaels premises. There was no witness to what occurred thereafter. The *only* person who could have furnished that testimony was the defendant himself, and the comment in question was a direct, unambiguous reference to defendant's failure to provide a defense which he could have accomplished only by his own testimony. The cases dealing with this problem are reviewed in *People v. Chellew*, 104 Ill.App.2d 100, 243 N.E.2d 49. Appellee cites *Watt*

*v. People*, 126 Ill. 9, and we view the comment made to the jury as falling squarely within the rule there enunciated, in that it did direct the attention of the jury to defendant's neglect to avail himself of his legal right to testify in his own behalf. As we have stated, under the facts here, there was no other witness to whom the reference could be applied. That the remark was made is unfortunate. We can make no judgment as to the effect it had upon the jury. Such comment is expressly prohibited by Ch. 38, Sec. 155—1, Ill. Rev. Stat. 1971. We agree with the statement contained in *Austin v. People*, 102 Ill. 261, which is quoted with approval in *People v. Chellew*, 104 Ill.App.2d 100, 243 N.E.2d 49, where the Court, in referring to the statutory prohibition against comment on defendant's failure to testify, said:

> "We do not see that this statute can well be completely enforced, unless it be adopted as a rule of practice that such improper and forbidden reference by counsel for the prosecution shall be regarded good ground for a new trial, in all cases where the proofs of guilt are not so clear and conclusive that the court can say affirmatively the accused could not have been harmed from that cause."

■■ We find reversible error in the admission of the evidence of Kenneth Helm's statement to Officer Meyers which was inculpatory as to this defendant, and in the improper comment as to defendant's failure to testify. In view of this holding we do not consider defendant's contention that the sentence imposed was excessive. The judgment is reversed and cause remanded for new trial.

Reversed and remanded.

CRAVEN, P. J., and TRAPP, J., concur.