THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN ARMAN, Defendant-Appellant.

First District (3rd Division)   No. 86—1996

Opinion filed June 1, 1988.

FREEMAN, J., concurring in part and dissenting in part.

Julius Lucius Echeles, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Kim A. Novi, and John R. Perkaus, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

A jury found defendant John Arman guilty of narcotics racketeering and the trial court sentenced him to 10 years' imprisonment. Defendant appeals.

On March 19, 1984, Detective Patrick Flynn of the Chicago police department placed a telephone call to a number which an informant gave him. When he heard a beep which allowed him to leave a message, he punched in number 05174 and the number of the outdoor pay telephone from which he placed his call. Shortly thereafter he received a phone call at the pay phone from a person who called himself "Chino." Flynn said he wanted two grams of cocaine. Chino told him it would cost $200, and he told Flynn to go to a specific street corner and call again. Flynn did so and Chino told him Felix would deliver the cocaine. A few minutes later a person drove up and Flynn asked if he was Felix. He said he was, and he gave Flynn two small packets of cocaine in exchange for $200.

Flynn determined that the phone number he called was registered to Radio Relay Corporation, which operates a paging service. Beeper number 05174 belonged to Spaulding Auto Parts. Defendant signed Spaulding Auto Parts' lease for the beeper. Defendant also owned the building which that company listed as its address. Flynn obtained a photograph of defendant.

On April 6, 1984, Flynn again called the beeper number from a

pay phone, and again a person using the name "Chino" called him back. Flynn requested two grams of cocaine and Chino told him to go to another intersection. Felix met Flynn at that intersection and exchanged packets containing cocaine for $200. Again on April 13, 1984, Flynn called the beeper number and a person who called himself "Chino" called back. The caller told Flynn that he did not need to call him "Chino" anymore, he could call him "Johnny." Johnny agreed to sell Flynn an eighth of an ounce of cocaine for $325. A person who called himself "Frog" delivered the cocaine. The next time Flynn called the beeper number, a person identifying himself as "Frog" called back, and Frog also delivered the cocaine purchased on that occasion.

On April 26, 1984, Flynn called the beeper number. The person who called back identified himself as "Johnny." Flynn recognized the caller's voice as the same as the voice of "Chino" and "Johnny" to whom he had spoken on prior occasions. Flynn arranged to purchase one-quarter of an ounce of cocaine for $575, and Felix delivered the cocaine. On May 3, 1984, and again on May 16, 1984, Johnny agreed to sell Flynn an ounce of cocaine. Felix delivered the cocaine on May 3, and a man who called himself "Julio" delivered the second ounce on May 16. Flynn called the beeper number from busy intersections to arrange all of his purchases. Most of his calls were returned by Johnny.

On June 11, 1984, Flynn obtained a court order permitting him to record his conversations with the persons who called him back when he called the beeper number. Flynn testified at trial that the person who called himself "Johnny" on the recordings had the same voice as the person who had arranged most of the earlier sales using the names "Chino" and "Johnny." On June 20, 1984, Flynn called the beeper number and Johnny called him back. Johnny agreed to sell Flynn eight ounces of cocaine for $15,000, and they decided to meet in the parking lot of a nearby Wendy's. When Flynn arrived at the parking lot he heard two whistles. He turned and saw defendant in a parked car. He asked defendant if he was Johnny and defendant said, "Yeah, man, I'm Johnny. Let's talk." Flynn testified that defendant's voice was the same as the voice of the Johnny with whom he had had about 30 telephone conversations. Defendant said he would not put the eight ounces of cocaine in the same place with the money, so he asked Flynn to give him the money and he would send Felix with the cocaine. Flynn refused to give defendant the money before he received the cocaine. Flynn testified that he went into Wendy's and sat down at a table and defendant subsequently

joined him. However, they were unable to reach an agreement on the delivery of the cocaine. Flynn left Wendy's and called the beeper number again. Johnny called him back, and in that tape-recorded conversation Johnny made reference to his conversation with Flynn at Wendy's.

At trial the prosecutor showed Flynn the picture of defendant Flynn obtained when he discovered that defendant signed the contract for the beeper. The prosecutor asked what the picture was, and Flynn answered: "This is a Chicago Police Department identification—." The trial court sustained defense counsel's prompt objection, but it denied defendant's motion for a mistrial. Flynn testified that he recognized defendant when he first met him in the Wendy's parking lot as the person in the photograph.

On cross-examination Flynn admitted that in one tape-recorded conversation Johnny said, "Chino's the one that sent you to me, right?" Flynn maintained that Chino and Johnny had the same voice as defendant.

In closing argument defense counsel stated that the photographs in evidence which showed defendant talking to Flynn in the Wendy's parking lot were insufficient to establish that defendant had come to Wendy's in order to complete a cocaine deal. In his closing argument the prosecutor stated: "I certainly didn't hear any explanation for what this defendant was doing at Wendy's." The trial court overruled defense counsel's objection. The prosecutor continued: "He never once gave you an explanation for what this defendant—," and the trial court sustained defense counsel's objection. Later, the prosecutor again stated: "There is no other explanation for this defendant appearing there, other than—," and again the trial court sustained defense counsel's objection and instructed the jury to disregard the comment.

■ On appeal defendant argues that the State failed to prove beyond a reasonable doubt that he was involved in the sales which were completed. When Flynn met defendant in the Wendy's parking lot he recognized defendant's voice as the voice of "Johnny" and "Chino" with whom he had had about 30 telephone conversations. In four of those calls "Johnny" arranged to sell Flynn cocaine, and the transactions proceeded in accord with the arrangements Johnny made. In two other calls Chino arranged cocaine transactions. After Flynn met defendant in the parking lot of Wendy's and their deal fell through, Flynn called the beeper number and spoke to a person who called himself "Johnny." Johnny referred to details of the encounter at Wendy's. This evidence is sufficient to prove beyond a reasonable

doubt that defendant was the "Johnny" who spoke to Flynn on the phone after the transaction at Wendy's fell through, and Flynn's identification was sufficient to prove beyond a reasonable doubt that the "Johnny" who spoke to him on that occasion was the same Johnny who had used that beeper number to arrange the completed sales to Flynn. Voice identification alone can be sufficient to prove guilt beyond a reasonable doubt. *People v. Finney* (1967), 88 Ill. App. 2d 204, 208-09, 232 N.E.2d 247, *cert. denied* (1968), 392 U.S. 936, 20 L. Ed. 2d 1394, 88 S. Ct. 2304.

Defendant maintains that Flynn's voice identification is incredible because he always spoke to Johnny on outdoor pay phones at busy intersections where there was considerable background noise, and Johnny once referred to Chino as a separate person, although Flynn testified that they were one and the same. These facts only go to the weight of Flynn's testimony; they do not establish that the jury could not believe Flynn. We hold that the evidence in this case was sufficient to prove beyond a reasonable doubt that defendant arranged the narcotics transactions which were completed.

Defendant next argues that the evidence was not sufficient to prove that he received income from the transactions. The State charged that defendant violated section 4(a) of the Narcotics Profit Forfeiture Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1654(a)). That section states:

"A person commits narcotics racketeering when he: (a) Receives income knowing such income to be derived, directly or indirectly, from a pattern of narcotics activity in which he participated, or for which he is accountable ***."

The evidence shows that defendant spoke to Flynn on the telephone and arranged several narcotics transactions. Defendant signed the rental agreement for the beeper as an agent of Spaulding Auto Parts, and he owned the building that Spaulding Auto Parts used as its address. The State contends that this is adequate circumstantial evidence showing that defendant received income from the transactions "Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind." (*Devine v. Delano* (1916), 272 Ill. 166, 179-80, 111 N.E. 742.) The jury may reasonably believe that persons who repeatedly arrange narcotics transactions usually receive income from the transactions.

Defendant contends that the circumstantial evidence is consistent with the hypothesis that defendant worked only as a switch-

board operator for the transactions. However, it is difficult to reconcile this hypothesis with the fact that defendant on the phone referred to Felix as a person who would deliver the cocaine, and defendant himself came to discuss the largest transaction with Flynn at Wendy's. Moreover, if defendant derived any income from working as a switchboard operator for the transactions, he "[r]eceive[d] income *** indirectly, from a pattern of narcotics activity" (Ill. Rev. Stat. 1983, ch. 56½, par. 1654(a)), and Flynn's testimony establishes that defendant knew that the transactions he arranged on the phone were narcotics transactions. Defendant would be innocent only if he worked as an unpaid volunteer switchboard operator for the narcotics transactions. "Circumstantial evidence is generally sufficient to support a conviction if it is inconsistent with any reasonable hypothesis of innocence, but the trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." (*People v. Rhodes* (1981), 85 Ill. 2d 241, 249, 422 N.E.2d 605.) We hold that the State presented adequate evidence to support the jury's verdict that defendant received income from a pattern of narcotics activity.

■ Defendant maintains that the case must be remanded for a retrial because the jury heard improper evidence and improper prosecutorial remarks. On direct examination, Flynn stated that before he met defendant he obtained a Chicago police department identification photograph of defendant. Since Flynn testified that the photograph was in police department files before any police had encountered defendant in connection with the instant case, the jury was aware that defendant had prior contact with the police department, and the police had retained an identification photograph of him in their files. Since the jury could have inferred from this testimony that defendant had been arrested prior to this incident, it was clearly inadmissible. (*People v. Hawkins* (1972), 4 Ill. App. 3d 471, 474-75, 281 N.E.2d 72.) The trial court correctly sustained defendant's objection, but denied his motion for a mistrial. We do not decide whether the presentation to the jury of Flynn's inadmissible testimony is sufficient, in itself, to require reversal.

■ Defendant contends that the prosecutor in closing argument improperly directed the jury's attention to defendant's failure to testify. Defendant failed to raise any objection to the prosecutor's closing argument in his post-trial motion. While such failure generally constitutes a waiver of the objection, the comments may be grounds for reversal under the doctrine of plain error. *People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233.

In closing argument the prosecutor at three separate times commented that the defense had presented no explanation for defendant's presence at Wendy's. Defendant objected each time. The court overruled the first objection and sustained the other two, instructing the jury to disregard the remarks. The State argues that the comments were invited by defense counsel's statements in closing argument regarding the pictures showing defendant talking to Flynn in Wendy's. In *People v. Helm* (1973), 9 Ill. App. 3d 143, 291 N.E.2d 680, defense counsel in closing argument made similar statements concerning the strength of the State's case, and the prosecutor in rebuttal commented that there was no evidence to the contrary. The court held that the comment required reversal: since contrary evidence could have come only from the defendant's testimony, the prosecutor's remark was an impermissible comment on the defendant's failure to testify. (*Helm,* 9 Ill. App. 3d at 149-50.) Similarly in the case at bar the prosecutor's remarks drew attention improperly to the fact that defendant did not testify and the remarks were not provoked by defense counsel's argument. We find that the prosecutor's comments in closing argument constitute plain error. (*People v. Wollenberg* (1967), 37 Ill. 2d 480, 488, 229 N.E.2d 490.) The impressions which the closing argument and Flynn's reference to a Chicago police department identification photograph made on the jury could not be entirely corrected by defense counsel's sustained objections and the court's instructions directing the jury to ignore the remarks. *People v. Cepek* (1934), 357 Ill. 560, 570, 192 N.E. 573.

The State contends that the improper statements which the jury heard in closing argument and Flynn's testimony did not prejudice the defendant because the evidence against him was overwhelming. The State relied primarily on the credibility of the voice identification made by one witness, Detective Flynn, comparing a voice he heard on the telephone with defendant's voice. Although there was substantial corroborative evidence, the other evidence could not alone support the conviction. While the jury was entitled to believe Flynn's testimony, we cannot say beyond a reasonable doubt that their deliberations were unaffected by the knowledge that police had an identification photograph of defendant prior to the offense involved herein and by the emphasis that the prosecutor placed on defendant's failure to testify.

The jury heard improper and prejudicial evidence and closing arguments despite the trial court's efforts, reflected in its decisions sustaining defense objections, to prevent the jury from considering the prejudicial material. Accordingly, we hold that the judgment must

be reversed and the cause remanded for a new trial.

Reversed and remanded.

RIZZI, J., concurs.

JUSTICE FREEMAN, concurring in part and dissenting in part:

I concur with that portion of the majority opinion finding that defendant was proved guilty beyond a reasonable doubt. However, I dissent from that portion of the opinion reversing defendant's conviction.

The majority first concludes that Officer Flynn's description of defendant's photograph as a police "identification" photo allowed the jury to infer "that defendant had been arrested prior to this incident." (171 Ill. App. 3d at 238.) Even assuming that Flynn's testimony did allow the jury to draw that inference, I cannot agree that such evidence was "clearly inadmissible." (171 Ill. App. 3d at 238.) In this regard, I find *People v. Hawkins* (1972), 4 Ill. App. 3d 471, 281 N.E.2d 72, on which the majority relies, fundamentally distinguishable from this case.

*Hawkins* involved the admission of police mug shots showing full face and profile views of the defendant standing before a height chart and wearing a sign around his neck bearing the legend "Kankakee, Ill. P. D." The photographs bore dates before 1970, the year of the offense for which the defendant was being tried. The court found the photographs' admission reversible error because they clearly revealed that they "were not taken as the result of the charge for which the defendant was being tried" but rather that "the defendant had in previous years on two separate occasions been arrested or had been in police custody for conduct totally unrelated to the crime for which he was being prosecuted." 4 Ill. App. 3d at 474-75.

Clearly, the basis of the *Hawkins* court's conclusion has no application to this case. Here, defendant does not contend that his photograph bore any date relative to the offense for which he was being tried. Moreover, Officer Flynn did not testify as to when the photograph had been taken relative to the offense for which defendant was being tried. As such, I do not believe, unlike the majority, that the mere description of defendant's photograph as a police "identification" photograph necessarily created in the minds of the juror's the same impression as the mug shots in *Hawkins*, i.e., that defendant had been arrested or in police custody prior to the offenses for

which he was being tried.

More analogous to this case is *People v. Purnell* (1969), 105 Ill. App. 2d 419, 245 N.E.2d 635, which the *Hawkins* court distinguished and which involved the admission of a police photograph of the defendant bearing the legend "Police Department, Maywood, Ill. 3458" from which the victim identified him. The court rejected a challenge to the photograph on the grounds that a photograph of an accused from which an identification is made can properly be admitted into evidence. (105 Ill. App. 2d at 422.) Similarly, in *People v. Harrison* (1982), 106 Ill. App. 3d 341, 348-49, 435 N.E.2d 1211, the court rejected a challenge to the arresting officer's testimony that he recognized defendant from a photograph in a daily police bulletin. Apropos to this case, the court noted that "[t]here was no suggestion *** that the jury could determine solely through the officer's testimony when the photograph *** was taken." (*Harrison*, 106 Ill. App. 3d at 349.) Under *Purnell* and *Harrison*, I do not believe that Officer Flynn's testimony was error.

Assuming that it was error, I do not believe that it was reversible error. In this regard, I do not believe that *Hawkins*, a Third District case, represents the dominant view in Illinois to the extent that it establishes a *per se* rule of reversal when evidence of the type at issue here is revealed to a jury.

Reviewing the split of authority on the admissibility of police mug shots in Illinois, the Appellate Court, Second District, found, in *People v. Wheeler* (1979), 71 Ill. App. 3d 91, 388 N.E.2d 1284, that the First and Third Districts approve of the admissibility of mug shots for identification purposes, even where legends containing the name of a police department and the date of the photograph are undeleted. In addition to *Purnell*, the court cited *People v. Adams* (1974), 22 Ill. App. 3d 665, 668-69, 318 N.E.2d 278, which approved the admission of mug shots where intended to show how defendants could have been accurately identified from them and not merely to show prior unrelated encounters with the police. Based upon its review, the *Wheeler* court determined that, although the use of mug shots with the name of the police department *and* a date prior to the offense charged was error, it was not necessarily reversible error. Where such a mug shot has probative value for identification purposes which outweighs any possible prejudicial effect, it concluded, the error in admitting it is harmless beyond a reasonable doubt. *Wheeler*, 71 Ill. App. 3d at 97-98.

In rejecting a challenge to the admission of a mug shot bearing an arrest date prior to the offenses at issue in *People v. Warmack*

(1980), 83 Ill. 2d 112, 413 N.E.2d 1254, the court conceded the error in admitting such evidence but, reviewing "the abundant evidence of guilt," also concluded that such error was harmless. The court stated:

"We have considered the totality of the evidence presented and can safely conclude that a trial without this error would produce no different result. In this regard, we especially note that defendant's allegation of prejudice is somewhat speculative. To hold that this error is reversible would require us to presume that the jury recognized the arrest date for what it was, realized that the arrest date preceded the date of the offenses with which defendant was charged, and then adjudicated defendant's guilt on the basis of this prior arrest rather than the evidence produced at trial. We do not believe that justice requires that this course be taken." 83 Ill. 2d at 128-29.

In *People v. Smith* (1987), 160 Ill. App. 3d 89, 512 N.E.2d 1384, a Fifth District case, the defendant argued that the admission of a mug shot revealed his prior connection with the law and necessarily prejudiced the jury against him. Significantly, he relied on *Hawkins* and *People v. Hudson* (1972), 7 Ill. App. 3d 333, 287 N.E.2d 297, as does defendant here. Disagreeing, the court stated: "[M]ug shots, including those bearing police legends and dates, are admissible to prove the identity of a defendant." (*Smith*, 160 Ill. App. 3d at 95.) Citing *Warmack*, the court held that to assume that any prejudice to defendant warranted a reversal would be purely speculative. Because the probative value of the mug shot far outweighed any possible prejudice, the court found no reversible error. *Smith*, 160 Ill. App. 3d at 95-96.

Thus, to the extent that *Hawkins* may be legally apposite to this case, it has been modified by cases requiring courts of review to judge the prejudicial effect of police photographs of a defendant taken before the offenses for which he is on trial, or testimony relating thereto, in the context of all of the evidence adduced against a defendant. I believe they require a court of review to find no prejudice to a defendant except in those cases where the evidence, at best, only marginally proves his guilt, which in my opinion is not the case here. Rather, I believe the evidence of defendant's guilt in this case was sufficient to render any error in Flynn's testimony harmless beyond a reasonable doubt.

The majority next concludes that the prosecutor's closing arguments that "the defense presented no explanation for defendant's presence at Wendy's" improperly drew attention to the defendant's

failure to testify. I cannot agree.

The test for determining whether the State has improperly called attention to a failure to testify is whether the remarks were intended or calculated to direct the jury's attention to the defendant's neglect to avail himself of his legal right to testify. (*People v. Dixon* (1982), 91 Ill. 2d 345, 438 N.E.2d 180.) The remarks complained of must be read in the context of the prosecutor's entire argument. *People v. Fulton* (1979), 68 Ill. App. 3d 915, 927, 386 N.E.2d 605.

Reading the remarks complained of in the context of the prosecutor's entire rebuttal closing argument, in which they were made, I believe it can reasonably be concluded that they were made in response to defense counsel's closing argument, whether or not they were invited by a specific argument. At the outset of his rebuttal argument, the prosecutor said, "I will address some of the issues that [defense counsel] has brought up ***." That portion of the rebuttal argument in which two of the complained-of statements were made reads as follows:

"[THE PROSECUTOR]: These pictures, I submit to you convict this defendant beyond a reasonable doubt. I heard counsel say well, why don't the police do this, why don't they get this license plate, why didn't they follow him. *** You have been told that there were numerous phone calls made, there were other people involved in this investigation, there were other targets of the investigation so a defense tactic is to knock the police procedure.

I certainly didn't hear any explanation for what this defendant was doing at Wendy's.

[DEFENSE COUNSEL]: Objection, just for the record, Judge.

THE COURT: Overruled.

[THE PROSECUTOR]: He talked about my investigation, he talked about my witness, he talked about the quality of the evidence. He never once gave you an explanation for what this defendant—

[DEFENSE COUNSEL]: Same objection, Judge.

THE COURT: Objection sustained.

[THE PROSECUTOR]: Was doing at Wendy's."

The third remark complained of occurred sometime later in the portion of the prosecutor's rebuttal wherein he was reviewing the State's evidence and said:

"It's the substance of these [taped] conversations *** linked with the picture of [Officer Flynn and defendant] meeting af-

ter they arrange to meet, that is going to convict this defendant beyond a reasonable doubt.

There is no other explanation for his defendant appearing there, other than—"

Reading the remarks in context, I conclude that they clearly were not intended or calculated to call attention to defendant's failure to testify. Rather, they were references to defense counsel's failure to explain in his closing argument defendant's presence at Wendy's. As such, I believe they were intended only to emphasize that the State's evidence was uncontradicted, not that defendant failed to testify. It is well established that a prosecutor may properly comment on the uncontroverted nature of the State's case where the comments are intended to demonstrate the absence of any evidentiary basis for defense counsel's arguments (*People v. Dixon* (1982), 91 Ill. 2d 346, 350; see also *People v. Jones* (1970), 47 Ill. 2d 66, 264 N.E.2d 189), even where the only person who could have contradicted the State's evidence was the defendant (*People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630).

Arguments similar to those here have long been upheld by reviewing courts as not intended or calculated to draw attention to a defendant's failure to testify.

In *People v. Jones* (1981), 97 Ill. App. 3d 619, 423 N.E.2d 235, where, as here, the defendant presented no evidence, the prosecutor argued that no one had offered "a reasonable explanation" for incriminating evidence because there was none. Although concluding that the comment obviously referred to the defendant, in contrast, I believe, to the facts here, the court also concluded that it was not intended to draw attention to his failure to testify. Rather, the remark was a justifiable comment on the fact that only the State had explained incriminating evidence. 97 Ill. App. 3d at 626-27.

In *People v. Acker* (1970), 127 Ill. App. 2d 283, 262 N.E.2d 247, the prosecutor argued repeatedly, in contrast to the three remarks in this case, that the State's evidence was "undenied," "unexplained," "unrefuted," and that there had been "no explanation by the defense." (*Acker,* 127 Ill. App. 2d at 290.) Although finding the remarks to be "near the danger line" and the State's persistence in emphasizing the uncontradicted character of its case improper, the court did not find the remarks prejudicial to defendant in view of the overwhelming evidence of guilt. *Acker,* 127 Ill. App. 2d at 294. Accord *People v. Kraman* (1981), 96 Ill. App. 3d 390, 421 N.E.2d 346.

In *People v. Morgan* (1986), 112 Ill. 2d 111, 492 N.E.2d 1303, *cert. denied* (1987), 481 U.S. 1025, 95 L. Ed. 2d 519, 107 S. Ct.

1914, the court rejected the error alleged in the prosecutor's argument to the jury, "Don't you think someone has some explaining to do?" The court found the remark not to be the type of direct and unequivocal reference to the defendant as found objectionable in *People v. Burton* (1969), 44 Ill. 2d 53, 254 N.E.2d 527, or otherwise intended or calculated to draw attention to the defendant's failure to testify. Rather, the remark was a permissible comment on the evidence summarized just before the question was asked. *Morgan,* 112 Ill. 2d at 133-34.

In contrast to this and the foregoing cases is *Burton,* in which, during the trial, the prosecutor referred to bloodstains on the defendant's trousers and his failure to explain them and then in closing argument stated, " 'And then he's got to explain the blood on the pants. *** Do we hear one iota of evidence that he did cut himself? *** There is no explanation for that blood on his pants from him but there is an explanation.' " (*Burton,* 44 Ill. 2d at 55-56.) Also in stark contrast is *People v. Ramirez* (1983), 98 Ill. 2d 439, 451, 457 N.E.2d 31, in which the prosecutor argued that the defendant, "has sat silent before you, before his accusers and before the tryer [*sic*] of fact and offered no explanation for the murder," which the court found highly prejudicial and reversible error.

Based on the law applicable to the prosecutor's remarks, I believe that the evidence of defendant's guilt was sufficient to render any error therein harmless beyond a reasonable doubt because the verdict would not have been different had the remarks not been made.

I must also disagree with the majority's somewhat flawed reasoning regarding the weight of the evidence in this case. The majority concludes that, although Flynn's voice identification of defendant was corroborated by substantial evidence, "the other evidence could not alone support the conviction." (171 Ill. App. 3d at 239.) This conclusion is as unnecessary as it is ambiguous. As Flynn's identification testimony was substantially corroborated, it is irrelevant that the "other" evidence, whether that refers to Flynn's testimony or the evidence corroborating it, could not alone convict defendant.

After conceding that Flynn's voice identification testimony was corroborated by substantial evidence and that the jury was entitled to believe it, the majority still "cannot say beyond reasonable doubt" that the jury's deliberations were unaffected by the prosecutor's remarks and Flynn's testimony. In relying on Flynn's description of defendant's photo to reach its ultimate conclusion, the majority presumes that the jury both understood the legal significance of that de-

scription and adjudicated defendant's guilt on the basis of a prior arrest indicated by the photograph rather than the evidence at trial. It is improper under *Warmack* for a reviewing court to so speculate where the jury has seen a photograph of a defendant bearing a date prior to the date of the offenses at issue. Therefore, it is even more improper for a reviewing court to so speculate with regard to the mere description of a defendant's photograph as a police "identification" photograph. Insofar as it relies on the prosecutor's remarks, I believe the majority finds error where none was committed.

I would affirm defendant's conviction under the case law which in my estimation represents the dominant view that neither of the alleged errors which the majority finds, in fact, warrants reversal.