(No. 22366.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES LEMAR, Plaintiff in Error.

*Opinion filed October 24, 1934.*

DEYOUNG, J., dissenting.

Joe A. Pearce, (Leonard F. Carmody, Ross G. Mc-Clure, and Frank J. Snite, of counsel,) for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and J. J. Neiger, (Edward E. Wilson, J. Albert Woll, and Henry E. Seyfarth, of counsel,) for the People.

Mr. Justice Orr delivered the opinion of the court:

James LeMar and one Joseph Kubish were found guilty in the criminal court of Cook county of the crime of robbery while armed with a dangerous weapon. LeMar brings the cause here by writ of error, assigning numerous errors hereinafter considered. Counsel appearing in this court for plaintiff in error did not represent him on the trial.

On March 8, 1933, four men entered a men's furnishing store and print shop in Chicago conducted by four Chinese. One of the men was armed with a sawed-off shot-gun and another had a pistol. Three of the partners and two employees were in the place at the time. Ng Dong, one of the partners, was compelled to open the safe, and the robbers took money and other property of the value of $160. Those in the place of business at the time of the robbery were threatened with death if they tried to give an alarm. All were brought together in one room and searched and any property of value found on them was taken. The robbers also rifled the show-cases in the store and took therefrom various articles of value. On April 10, LeMar, Kubish and one Steve Rusnik were arrested and taken to the police station. The Chinese in the store at the time of the robbery were notified to appear at a "show-up." All of them identified Kubish. One of them, Hughes Lee, also identified LeMar.

It is argued that the identification of LeMar was not sufficient to justify the verdict against him. Hughes Lee testified that at the time of the arrest of LeMar and Kubish he went to the police station and picked Kubish and LeMar out of six or seven who were exhibited; that he remembered LeMar's face; that during the robbery LeMar stood next to him, pointing a gun at him while the safe was being opened; that the lights had been turned on in the building and he saw LeMar for about fifteen minutes and was looking straight at him; that Kubish searched the pockets of everybody and LeMar held the shot-gun, and that while Kubish was going through the witness' pockets the latter was looking at LeMar. He testified that he went to the police station to attend show-ups several times before LeMar was arrested, and that it was at the last, or fourth, time that LeMar was there. He was positive in his identification.

The defense offered by LeMar was an alibi. He testified that he was in Withe, Wisconsin, about 328 miles from Chicago, staying with an uncle and his family, consisting of his wife and two daughters, and that he went there on the second or third of January and stayed until about the first of April. He offered one James A. Gillis as a character witness in his behalf. This witness lived on Newberry avenue, in Chicago, and after testifying to LeMar's good character he stated that he saw him practically every day from January 1, 1933, until the day he was arrested. The police officer who arrested LeMar testified that at the time of his arrest he told LeMar that a Chinaman had charged him with robbery on the eighth of March and that LeMar then said nothing about being in Wisconsin. On cross-examination he was asked whether he questioned LeMar as to where he was at the time of the robbery, and the officer replied that he did. This examination was not pursued any further. No other alibi evidence was presented.

Lee was the only witness who identified LeMar although he and three others identified Kubish. No one other than LeMar testified that he was in Wisconsin or elsewhere at the time of the robbery. Witness Lee placed his identification on the fact that he looked at LeMar while the latter was holding a gun on him for about fifteen minutes, during which time Kubish was going through the safe and the pockets of those present. It may have been that he had a better opportunity to identify LeMar than did the others in the store. The question of the weight of his testimony was for the jury. His identification, as we have said, was positive. The defense of alibi was materially affected by the testimony of LeMar's character witness, who stated that he saw LeMar nearly every day during the time covered by the latter's testimony that he was in Wisconsin. Counsel point out that when Lee identified LeMar at the police station, officer Fitzgerald, who had made the arrest, was present and asked him if he was sure, and that Lee stated he was going to present some others who were there with him. The officer testified that he asked this question of Lee because he wanted to be positive, and that he was pretty sure that Lee recognized LeMar. We would not be justified in setting aside the verdict on this record of the testimony.

It is also contended that the court erred in denying a separate trial for LeMar. An examination of the abstract, however, discloses only the notation that a motion for separate trial for LeMar was made and overruled. So far as appears, no affidavit was filed in support of the motion or reasons advanced for its allowance. A separate trial is a matter resting within the discretion of the trial court. (*People* v. *Lopez,* 296 Ill. 438.) The motion for separate trial must set out grounds showing reason for granting the same and must be supported by an affidavit. (*People* v. *Paisley,* 299 Ill. 576; *People* v. *Temple,* 295 id. 463.) No error appears here.

It is also argued that the court erred in refusing to allow LeMar to waive a trial by jury over the objection of the State's attorney. This point was decided contrary to the contention of plaintiff in error in *People* v. *Scornavache,* 347 Ill. 403.

Error in instructing the jury is next complained of. It is first said that an instruction given on behalf of the People was erroneous. This instruction told the jury that where an alibi is interposed as a defense, the facts and circumstances in support of such alibi must be sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the guilt of the defendant. The objection is that this instruction placed upon the defendant the burden of creating a reasonable doubt. The instruction correctly stated the law. (*People* v. *Lacey,* 339 Ill. 480.) The jury were also told in another instruction that the burden of proof is not changed when the defendant introduces evidence of an alibi, and that if they had a reasonable doubt as to the guilt of the defendant they should acquit him even though the alibi was not fully proved.

In behalf of LeMar certain instructions were tendered and refused relating to his identity. A review of the evidence shows that the whole case against him hinged upon the question of his identification. In particular, two instructions, "H" and "J," were submitted by LeMar. Instruction "H" was as follows:

"The court instructs the jury that so far as the identity of the defendant is concerned and from the evidence and circumstances proved the jury believe that there is a reasonable doubt whether the witnesses might not be mistaken as to the identity of the defendant they would not be authorized to sign a verdict of guilty; the corroborating circumstances tending to establish the defendant's identity must be such as, with other testimony, produce a degree of certainty in the minds of the jury so great that they can

say there is no reasonable doubt of the identity of the defendant."

The court did not err in refusing to give instruction "H," as it is not necessary that there be any corroborating circumstances to establish the defendant's identity. A positive identification by one witness that a defendant perpetrated a crime is sufficient to sustain a conviction. (*People* v. *Fortino*, 356 Ill. 415.) Instruction "H" would have required that not only corroborating circumstances, but, in addition thereto, other testimony, must be produced to establish the defendant's identity. If such were the rule it would be impossible to establish the identity of any defendant who had held up and robbed a man unless others were present at the scene of the crime who could also corroborate the testimony of the victim.

Instruction "J" was as follows:

"The court instructs the jury that in determining whether or not this defendant has been identified as the person who committed the offense charged against him, if any such offense was committed, you must consider all the testimony in the case both that for the prosecution and that for the defendant, considering their means of identification, their opportunity for identifying the said defendant, and the description of his apparel as stated by the witnesses, if any such was stated, and the probabilities or improbability that the defendant committed the offense, if any offense was committed, and if, after so judging and weighing the testimony you are not satisfied beyond all reasonable doubt that the defendant has been identified as the person who committed the offense as charged in the indictment, if any was committed, it will be your duty to find the defendant not guilty."

The trial court erred in refusing to give instruction "J" for the defendant. Without approving the specific language of this instruction and without expressing any opinion as to the merits of the case, it is nevertheless well set-

tled that the accused was entitled to have his theory of defense, chiefly based upon lack of proper identification, submitted to the jury by a proper instruction. No instruction was given by the trial court on the question of LeMar's identification. The refusal to submit any instruction to the jury on this important issue may have prejudiced LeMar, especially since he was only identified by one out of four eye-witnesses to the crime. He had a right to have the jury instructed on his theory of the case. *City of Chicago* v. *Cruse,* 337 Ill. 537; *Carroll* v. *Eckley,* 305 id. 367.

The court's refusal to instruct the jury on the subject of LeMar's identification constituted reversible error. The judgment of the criminal court is therefore reversed and the cause is remanded.          *Reversed and remanded.*

Mr. JUSTICE DEYOUNG, dissenting.