(No. 36245.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NATHAN BROWN, Plaintiff in Error.

*Opinion filed September 28, 1962.*

BRIAN J. BUCKLEY, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, Nathan Brown, was indicted by the grand jury of the criminal court of Cook County for killing Lucille Fitzpatrick. The indictment contained two counts, one charging him with murder and the other charging him with manslaughter. He was tried by jury and found guilty under the count charging him with murder and was sentenced to the penitentiary for a term of 99 years. He obtained a bill of exceptions under Rule 65—1. We appointed counsel for him and the cause is now here on a writ of error.

The evidence showed that at about 2:00 o'clock in the morning of September 11, 1956, Lucille Fitzpatrick and Nathan Gaus were leaving a tavern on West Madison Street in Chicago. As they stepped into the street they were both struck by a speeding car which was headed west on Madison Street. Gaus was thrown down near the curb and Lucille Fitzpatrick was thrown into the center of the street. The car continued for about half a block where a policeman attempted to flag the car down with his flashlight. Instead of stopping, the car made a U-turn and drove back east on Madison Street, and on its return trip ran over the body of Lucille Fitzpatrick. The medical testimony showed that Lucille died as a result of all the injuries she sustained, both from the original contact with the car and from being run over on the car's return trip, although the doctor testified

that the original striking was probably sufficient to cause her death.

After the car made its turn, the police officer commandeered a passing cab and pursued the car for about 3 blocks until it stopped. The officer and the cab driver identified the defendant as the driver of the car. The officer testified that the defendant told him that he had been waiting four hours to get Lucille Fitzpatrick. There is some doubt as to whether the officer testified that the defendant had said "fòr hours," or "four hours," since the words are phonetically identical. The defendant denied making any such statement.

The evidence showed that the defendant had first met Lucille Fitzpatrick about 3 months prior to her death and that within a few weeks after his introduction to her he commenced living with her at her apartment. A few weeks after he had moved in with her he returned unexpectedly one morning and found Lucille in bed with another man. He beat Lucille and left in a rage. Following this occurrence Lucille and the defendant had numerous arguments. At one time she threatened him with a gun and on another occasion she had him arrested for disorderly conduct. Gaus testified that about a month before Lucille's death the defendant threatened to shoot him and Lucille and that about two weeks before her death the defendant told Lucille that he wanted to go with her and that if he didn't, no one else would.

About two weeks before Lucille's death, Lucille induced another man to beat the defendant in retaliation for his beating her. The defendant was pistol-whipped and received several cuts on his head requiring stitches. Defendant filed a complaint against his assailant who filed a cross complaint and the cause was set for hearing on September 12, the day following Lucille's death. On another occasion, defendant saw Lucille at a tavern with 3 strangers from Columbus, Ohio, who told him that they had come to town to punish

him at Lucille's request. Shortly thereafter, these parties were arrested in connection with a bank robbery.

The day before Lucille's death the defendant called Lucille and warned her that the police were watching her apartment. Although she seemed friendly at this time she told the defendant later in the day that she was going to testify against him on the 12th. The defendant called her at about 10:30 in the evening and Lucille was very belligerent and blamed him for informing the police of the presence of the three strangers and causing their arrest. She told the defendant that she was going to testify against him and see that he got some kind of a sentence.

The defendant testified that he had been drinking beer all day and that he continued drinking until about 2:00 in the morning. When he got into his car, which was parked near the tavern where he knew that Lucille had been spending the evening, he testified that he got the idea of scaring her with the car to keep her from testifying against him. When he saw Lucille coming out of the tavern, the defendant "gunned" the motor and drove toward Lucille and Gaus. The defendant had an artificial left leg and in order to drive his car he had to place his foot on the clutch pedal and then press down on his knee with his hand in order to depress the pedal. To let the pedal out he had to release the pressure on his knee. The defendant testified that he normally didn't have any trouble driving the car in that manner. According to the defendant, as he started down the street toward Lucille and Gaus, "something went wrong." Gaus jumped back to the curb and Lucille jumped forward into the path of the oncoming car. The defendant testified that he tried to avoid both of them and thought that he had avoided Gaus although he knew that the car had struck Lucille and knocked her down. Defendant testified that he was unaware that he had driven over Lucille's body on his return trip following his U-turn.

The defendant's counsel has ably and persuasively

argued that these facts are insufficient to support a conviction of the crime of murder, although it is conceded that the defendant is guilty of a criminal act. The State contends that the evidence is sufficient to establish a deliberate, premeditated killing.

Our review of the evidence satisfies us that the evidence here was sufficient to establish the defendant's guilt of the crime of murder. It is undisputed that the car driven by the defendant actually struck and killed Lucille. The evidence was sufficient to establish a motive for the defendant to kill Lucille, and while it is not necessary in a criminal prosecution for the State to establish a motive, evidence of motive is of value in determining whether a killing is accidental, or whether it is manslaughter or murder. In addition to the evidence of motive, there is evidence that the defendant had threatened Lucille. The only evidence tending to establish that the killing was either accidental or was manslaughter, is the testimony of the defendant that he did not intend to strike Lucille with the car but only intended to scare her. However, the jury was not bound to believe the defendant's testimony in this regard. The circumstances surrounding Lucille's death and the events leading thereto are consistent with and furnish a sufficient basis for the jury's finding that the defendant was guilty of murder.

The defendant also argues that the court improperly instructed the jury on the law of involuntary manslaughter. However, the abstract does not contain any of the instructions, and we have repeatedly held that an assignment of error dealing with the instructions to the jury will not be considered where all of the instructions are not set forth in the abstract. We therefore do not consider this assignment of error.

For the reasons expressed herein the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*