THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALBERT WINFREY, Defendant-Appellant.

(No. 72-75;

Second District—April 9, 1973.

*Supplemental opinion upon denial of rehearing June 7, 1973.*

James M. Shellow and James A. Walrath, both of Shellow & Shellow, of Milwaukee, Wisconsin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan, (James W. Jerz, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The defendant, Albert Winfrey, was indicted together with a co-defendant, Tommie Lee Saunders, on January 25, 1971 for the offense of rape by the grand jury of Lake County. Winfrey was found guilty of the charge after a jury trial and sentenced to the penitentiary for a term of 5 to 20 years. Saunders pleaded guilty to a reduced charge of aggravated battery and testified against Winfrey at the trial. On appeal, Winfrey contends that (1) the trial court committed reversible error when it failed to grant his request for the services of an expert witness at State expense; (2) he was denied due process of law and his constitutional right to a fair trial by the one-on-one confrontation with the alleged victim at the police station; and (3) the trial court improperly refused to instruct the jury on the suggestiveness of the identification procedure employed by the prosecution.

On the day of trial, after a jury had been drawn but before the trial itself commenced, the defendant made an oral motion to have the court appoint an expert witness to make an analysis of his seminal fluid and compare it with the semen extracts taken from the clothing of the com-

plaining witness. The court questioned the timeliness of the motion and denied it for, as it stated, "various reasons."

The defendant maintains that a comparison of seminal extracts was crucial to his defense since a determination that the extracts found on the victim's clothing was not of the same blood grouping as his own would have cast considerable doubt on his participation in the crime. For that reason, he contends that the denial by the trial court of his request for a court-appointed chemist to make such an analysis and comparison was a deprivation of his constitutional rights. In the case of the *People v. Watson,* 36 Ill.2d 228, 234, 221 N.E.2d 645, our Supreme Court held that an indigent defendant was entitled to funds to hire an expert witness where the expert testimony is deemed crucial to a proper defense. In that case the defendant was charged with the offense of forgery in that he attempted to cash a stolen check. Prior to trial the defendant, through his court-appointed attorney, filed a motion requesting the court to provide him with funds, because of his indigency, to hire a questioned document examiner. The trial court denied the motion and the defendant was ultimately found guilty. The Supreme Court stated that the opinion of a hand-writing expert may have been crucial to the defense since a similar check had been cashed after the accused was in custody and a comparison of the signatures on the two checks and with the signature of the defendant could well have established his innocence in the eyes of the jury. For that reason, the court found that the denial of his motion denied the defendant his constitutional right to a fair trial and his right to have process to compel the attendance of witnesses on his behalf. The court held that "* * * under the facts presented in this case * * *" the defendant was entitled to a reasonable fee to hire an expert witness.

The most obvious, and the most critical, distinction between the *Watson* case and the instant one is on the question of indigency. In *Watson,* the indigency of the defendant was beyond question. Here, the only mention of the defendant's financial status in the record is the statement of the defendant's trial counsel that Winfrey's parents had assumed the costs of his defense (Winfrey was 18 years old at the time of trial) and that they had "indicated" that they would pay for an expert but had failed to do so. The record also shows that Winfrey had put up a $750 bond (of which $250 was refunded before trial); employed private trial counsel; posted a $5,000.00 cash appellate bond within one month after bond was set; and retained new counsel to represent him in this appeal. At no time was the issue of Winfrey's "indigency" presented to the trial court other than the last minute request for the appointment of an unspecified "expert".

■■ We are aware of the many cases carefully safeguarding the constitutional rights of indigent defendants and that the issue of indigency "*  *  * is a delicate matter and must be delicately decided, always with an eye toward protection of the rights of the accused from any possible impairment". (*People v. Cole*, 97 Ill.App.2d 22, 25, 239 N.E.2d 455, 457; *People v. Rebenstorf*, 37 Ill.2d 572, 575, 229 N.E.2d 483.) Although most of the many cases cited by the defendant relate to an indigent's right to legal counsel, there are cases, such as *Watson*, holding that, in appropriate circumstances, an indigent accused is also entitled to the services of an expert witness at the expense of the state.

■■ We are convinced, nonetheless, that the denial of the defendant's request in this case was entirely proper. The defendant made no offer of proof of his alleged indigency and, indeed, trial counsel, privately retained, represented that his parents had agreed to pay the expenses of his defense. The record itself would support the opposite conclusion, *i.e.*, that the defendant was not indigent. In addition, we agree with the trial court that the request for appointment of an expert was untimely. The defendant was informed approximately two months before trial that the State had evidence of seminal stains on the clothing of the prosecuting witness. It is difficult to disagree with the contention of the State that the last minute request was essentially a request for a continuance that was properly denied.

The defendant filed a motion to suppress and exclude all identification testimony relating to the stationhouse identification made by the prosecuting witness and to exclude any in-court identification by her. That motion was denied after a pretrial hearing and the defendant was identified as her assailant by the witness at the trial.

The police contacted the prosecuting witness 4 days after the rape incident and asked that she come to the station to view some suspects. When she arrived at the station she was taken to a room in the detective bureau where she confronted Saunders and identified him to an Officer McMahon as one of her assailants. There is some confusion as to what happened next. The prosecutrix stated that she was then informed that there was another suspect and was asked to remain at the station for a possible identification. Officer McMahon denied that he informed her that there was a second suspect to be identified. In any event, the prosecutrix and her husband waited in a hallway of the bureau after she had identified Saunders. Officer McMahon then came around a corner with the defendant and the prosecutrix turned to her husband and stated that Winfrey was the other man who had assaulted her. The defendant contends that the confrontation was not accidental, as alleged by the police, but was deliberately arranged to suggest to the prosecutrix the identity

of her assailant. He further maintains that the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.

The procedure described as "one-on-one" or "show-up" identification where suspects are shown alone has been universally criticized as unreliable and widely condemned. (*People v. Sanders*, 4 Ill.App.3d 494, 280 N.E.2d 269, 272; *People v. Gardner*, 35 Ill.2d 564, 572.) It has been the law in Illinois since the case of the *People v. Blumenshine*, 42 Ill.2d 508, 513, 250 N.E.2d 152, that identification evidence is inadmissible if it can be proven that the pretrial confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that the accused has been denied due process of law. It was recognized in *Blumenshine* that an improper pretrial identification proceeding would not render an in-trial identification inadmissible, however, if the record would indicate to an "informed judgment" that the identification was based on an observation that was independent of and uninfluenced by the improper procedure. Accordingly, a number of subsequent cases have held that an in-court identification may be admissible, even when the pre-trial confrontation and identification procedure was not proper, if it is shown by clear and convincing evidence that the courtroom identification had an independent origin arising from an earlier uninfluenced observation of the accused. *People v. Patrick*, 53 Ill.2d 201, 206, 290 N.E.2d 227; *People v. Catlett*, 48 Ill.2d 56, 268 N.E.2d 378; *People v. Perry*, 47 Ill.2d 402, 266 N.E.2d 330; *People v. Martin*, 47 Ill.2d 311, 265 N.E.2d 685.

Although the testimony of the prosecutrix varied in some details at the trial from her testimony a month earlier at the pretrial hearing on the defendant's motion to suppress, it was consistent as to the essential facts. She testified that she was approached by the defendant at approximately 10:30 P.M. on October 23, 1970, as she walked down a sidewalk. Winfrey walked with her for several blocks (she said ½ block at the pretrial hearing) and she had good occasion to view him as they conversed since the street was well lighted. Saunders then joined them and she also talked to and walked with him. She was then grabbed by the men and dragged into the bushes where first Winfrey, then Saunders, and then Winfrey again, had intercourse with her while she was on her back. She stated she was with Winfrey for a period of 15 minutes and had a good look at his face for at least 5 minutes during the encounter.

Although the prosecutrix made no mention of her assailant's facial characteristics, clothing, age or weight, her courtroom identification was positive. It has been held that precise description is not necessary where identification is positive. *People v. Miller*, 30 Ill.2d 110, 113.

■ It is clear that the courtroom identification of the defendant by the prosecutrix was based, not on their momentary confrontation in the police station, but on her observation of him on October 23. She had ample opportunity to view him during that encounter including, obviously, a close look at his face during the two acts of intercourse. Under these circumstances, we are satisfied that the courtroom identification was based on an observation of independent origin and not on any improper pretrial confrontation.

Finally, the defendant argues that the trial court erred when it failed to instruct the jury that the suggestiveness of the police identification procedure should be considered in considering the weight to be accorded to the victim's in-court identification. At the instruction conference, the following instruction was tendered by the defense;

> "In considering the weight you should accord to the testimony of the sole eyewitness to this crime, you should consider the extent, if any, that the identification procedure employed by the police may have suggested to her that the defendant was the person who committed the offense."

The instruction was refused by the court as being neither proper or suitable.

■■ The defendant has cited a number of Illinois cases to the effect that an identification instruction is proper. *People v. LeMar* (1934), 358 Ill. 58, 192 N.E. 703; *People v. Ricili* (1948), 400 Ill. 309, 79 N.E.2d 509; *People v. Moses* (1957), 11 Ill.2d 84, 142 N.E.2d 1.

The Illinois Pattern Instructions (IPI Criminal) recommend that no instruction on identification be given on the ground that the subject "* * * is adequately covered by the general instruction on credibility of witnesses." IPI Criminal, No. 3.15.

The general instruction on credibility of witnesses (IPI Criminal No. 1.02 which was given as People's Instruction No. 3) provides as follows:

> "You are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case."

In the case of the *People v. Smith*, 47 Ill.2d 528, 530, 267 N.E.2d 669, decided in 1971, our Supreme Court upheld the ruling of a trial court that a tendered instruction on identification be refused even though the case was decided before the effective date of Supreme Court Rule 451

(Ill. Rev. Stat. 1969, ch. 110A, sec. 451) approving the use of IPI instructions in criminal cases. The court stated:

> "We are of the opinion that the instructions given, particularly those regarding the credibility of witnesses, impeachment through prior inconsistent statement and the State's burden of proof, adequately placed before the jury the defendant's theory of defense and that it was therefore unnecessary to submit a specific instruction on the identification issue."

A similar decision was later rendered by the Supreme Court in the case of the *People v. Fox,* 48 Ill.2d 239, 269 N.E.2d 720.

We are of the opinion that the trial court properly refused the tendered instruction on identification and that the instructions to the jury, considered as a whole, fully stated the law relative to the respective theories of the defense and the prosecution.

For the reasons stated the judgment of the trial court is affirmed.

Affirmed.

GUILD, P. J., and T. MORAN, J., concur.

## SUPPLEMENTAL OPINION

Mr. JUSTICE ABRAHAMSON delivered the supplemental opinion of the court:

Since the filing of the opinion herein the defendant-appellant has filed a petition for rehearing and application for certificate of importance touching upon defendant's indigency and the victim's in-court identification.

The opinion filed goes to great length as to defendant's indigency and no further comments will be made on that issue.

Regarding the identification of the defendant by the prosecutrix, the opinion sets forth the confrontation at the police station and the in-court identification. There is another factor which further distinguishes this case from most rape cases and that is, as indicated on page 1 of the opinion that the codefendant, Tommie Lee Saunders, testified against the defendant at the trial and described in great detail defendant Winfrey's actions.

The petition for rehearing and application for certificate of importance is denied.

GUILD, P. J., and T. MORAN, J., concur.