THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD E. SMITH, JR., Defendant-Appellant.

Fifth District   No. 5—86—0163

Opinion filed September 4, 1987.

Appeal from the Circuit Court of Marion County; the Hon. Dennis L. Berkbigler, Judge, presiding.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, and Deborah Buer, law student, for appellant.

Robert W. Matoush, State's Attorney, of Salem (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant, Richard E. Smith, was convicted by a jury of residential burglary and sentenced to eight years' imprisonment in the Department of Corrections by the circuit court of Marion County. Defendant appeals from his conviction.

In the early morning hours of July 8, 1985, Helen Telford, age 76, was awakened by her mother calling out to her. Mrs. Telford got up out of bed and saw two men standing in her house. She turned on the bedroom light and ordered them to leave. The two refused to go. One of the men began searching the bedroom for money; the other, defendant, stayed with Mrs. Telford. She entered the dining room, turned on the light and attempted to use the telephone to call the police. Even though the phone line had been cut, the second man came over to Mrs. Telford, grabbed the phone away from her and "slung it down." She proceeded to the kitchen and turned on another light. When she stepped into the hall and approached a hamper with a pair of shoes on it, defendant flung the shoes. Mrs. Telford slapped defendant in the face. He continued to follow her around the house telling her he wanted money until the other man called out, "I got it." The two men then fled through a back window.

A short time later the police arrived. Mrs. Telford described the man who followed her as being "kind of chunky-faced" with "light-colored, fuzzy hair." The other man was described as being "kind of tall and slim," and wearing a black shirt and headband. Mrs. Telford's mother was too distraught to describe either.

Two days later, Mrs. Telford, while in the Wamac City Hall paying a bill, was approached by Officer Robert Smith. He asked her if she would be willing to look at pictures of possible suspects. Mrs. Telford viewed six photographs or "mug shots" and identified defendant as the man who followed her around the house. Officer Smith told her

defendant's name after she had selected his photo. The name matched that of an individual rumored in the community to be one of the men who broke into her house. Six months later, Mrs. Telford again identified defendant from another photo array. She accused Officer Smith at that time of trying to "mess [her] up."

At defendant's trial, Mrs. Telford identified defendant in court as being the man who followed her around the house. Patrick Thompson, defendant's former cell-mate, however, confessed to the crime with which defendant was charged. Thompson related to the jury essentially the same details of the burglary as those told by Mrs. Telford, but confused Mrs. Telford with her mother. Mrs. Telford testified on rebuttal she had never seen Thompson before. The jury chose to believe Mrs. Telford and found defendant guilty of residential burglary.

Defendant raises several points on appeal. He argues: (1) he was not proved guilty beyond a reasonable doubt; (2) he was denied a fair trial because evidence implicating him in other crimes was improperly admitted; (3) he was denied a fair trial when the arresting police officer testified defendant remained silent after being given *Miranda* warnings; (4) he was denied a fair trial because the prosecutor gave his own unsworn testimony and misstated evidence presented at trial; (5) he was denied effective assistance of counsel; and finally (6) he is entitled to an additional two days' credit against his sentence. We take these issues in the order stated.

■ Defendant contends he was not proved guilty beyond a reasonable doubt because Mrs. Telford's identification of him was less than positive and another individual more closely matching her description of the burglar confessed to the crime. Specifically, defendant argues the photographic display was so unduly suggestive that even Mrs. Telford's in-court identification was tainted. This, in addition to Thompson's confession and the fact that Mrs. Telford was not wearing her glasses during the burglary, establishes in defendant's eyes that Mrs. Telford was mistaken in her identification of him. We disagree.

We first note defendant has waived the issue of the suggestive nature of the photo array because he failed to move to suppress the display, to object to its introduction at trial or to include the issue in his post-trial motion. (See, *e.g., People v. Friesland* (1985), 109 Ill. 2d 369, 374, 488 N.E.2d 261, 262; *People v. Mitchell* (1975), 34 Ill. App. 3d 311, 319, 340 N.E.2d 226, 232.) More importantly, however, the photo display was not unduly suggestive. It is true defendant was the only blonde, as well as the only shirtless, suspect in the photo lineup. He was also five years younger than any other suspect in the array,

although most appeared to be fairly young. But similar, if not potentially more prejudicial, photo arrays have been found not to be unduly suggestive so as to taint a subsequent in-court identification or merit reversal. (See *People v. Levine* (1981), 99 Ill. App. 3d 141, 426 N.E.2d 215 (defendant's photo only one in color, only one wearing sunglasses); *People v. Johnson* (1976), 43 Ill. App. 3d 649, 357 N.E.2d 151 (defendant only subject in photo array without a shirt on); *People v. Hart* (1973), 10 Ill. App. 3d 857, 295 N.E.2d 63 (defendant's picture only one with date on it, in addition to being largest photo in array); *People v. Hudson* (1972), 7 Ill. App. 3d 333, 287 N.E.2d 297 (defendant's photo only one in color). See also *People v. Harrell* (1982), 104 Ill. App. 3d 138, 432 N.E.2d 1163 (seven of nine photos in array older with different edges and backgrounds, defendant longer hair than others, and defendant eight years older than other suspects in actual in-person lineup).) Complete exactitude of features is not required. (*People v. Harrell* (1982), 104 Ill. App. 3d 138, 145, 432 N.E.2d 1163, 1169.) Moreover, there is no evidence on the record of any improper influence arising out of the police department's actions. (See *People v. Johnson* (1976), 43 Ill. App. 3d 649, 658, 357 N.E.2d 151, 158.) Officer Smith did not tell Mrs. Telford defendant's name until after she positively identified him as one of the burglars, the one whom she slapped in the face.

■ Even if we were to find the photo lineup to be unduly suggestive, defendant still cannot overcome the strength of Mrs. Telford's independent in-court identification. It is clear that, in view of the totality of the surrounding circumstances, Mrs. Telford identified defendant at trial solely on the basis of her memory of the events at the time of the crime. (See *People v. McTush* (1980), 81 Ill. 2d 513, 520-21, 410 N.E.2d 861, 865; *People v. Anton* (1981), 100 Ill. App. 3d 344, 348, 426 N.E.2d 1070, 1075; *People v. Levine* (1981), 99 Ill. App. 3d 141, 158-59, 426 N.E.2d 215, 229.) Mrs. Telford had more than sufficient opportunity to view defendant at close range under good lighting conditions. She turned on several lights in the house with defendant following her from room to room. At one point she even slapped defendant's face. As she testified, she could not help watching his face, she looked right at it all the time. She could not keep from recognizing him. The fact that Mrs. Telford needs glasses for reading and sewing does not make her identification of defendant any less positive. As she herself stated, "I see awful good." She described defendant to the police and two days later positively identified him from a photo display. She had no doubt in her mind that defendant was the burglar. (*Cf. People v. Cohoon* (1984), 104 Ill. 2d 295, 472

N.E.2d 403 (hypnosis used to aid in identification).) She was equally adamant that Thompson was not the burglar whom she slapped.

Defendant argues, however, the description Mrs. Telford gave to the police after the incident more accurately fits Thompson's description. Thompson does not have light hair, while defendant does. Thompson is not "chunky-faced," while defendant is. Rather, Thompson's face is, in the words of Mrs. Telford, "broader." In addition, Thompson's photo reveals he is overweight, not muscular like defendant. Clearly defendant matches the description better than does Thompson. Precise accuracy in describing the accused is not necessary when the identification of defendant is positive. (*People v. Mitchell* (1975), 34 Ill. App. 3d 311, 322, 340 N.E.2d 226, 234; *People v. Doss* (1975), 26 Ill. App. 3d 1, 16, 324 N.E.2d 210, 221. See also *People v. Harrell* (1982), 104 Ill. App. 3d 138, 146-47, 432 N.E.2d 1163, 1170.) Mrs. Telford had sufficient opportunity to see and observe the burglar who followed her through her house to make a positive identification of that individual at a later time. Minor discrepancies or omissions in her description do not affect the overall validity of her identification. See *People v. Doss* (1975), 26 Ill. App. 3d 1, 16, 324 N.E.2d 210, 221.

Defendant points out that Thompson confessed in open court to the burglary of Mrs. Telford's house. What defendant fails to realize, however, is that it was for the jury to determine the credibility of Thompson's story in relation to the reliability of Mrs. Telford's identification. (See *People v. Reppa* (1982), 104 Ill. App. 3d 1123, 1126, 433 N.E.2d 1091, 1094; *People v. Doss* (1975), 26 Ill. App. 3d 1, 16, 324 N.E.2d 210, 221.) It should be noted that the State attacked Thompson's credibility on several grounds. Thompson had shared a cell with defendant before confessing to the burglary. He also had been previously convicted for burglary and felony theft. In his plea agreement on another charge, Thompson worked out a deal that any sentence he might receive for burglarizing Mrs. Telford's house would run concurrently with the sentence for the crime to which he was then pleading. Thompson testified he understood this to mean he could not serve any additional time for the Telford burglary. A suggestion was also made that he confessed to the Telford burglary in order to get some or all of defendant's bond money. The jury simply chose to believe Mrs. Telford's clear and unequivocal identification of defendant and equally clear and unequivocal denial of Thompson being the burglar whom she slapped.

■ The testimony of a single occurrence witness is sufficient to support a conviction, even though such testimony is contradicted by

the defendant, when the identification of the accused is positive and the witness is credible. (*People v. Son* (1982), 111 Ill. App. 3d 273, 281, 443 N.E.2d 1115, 1121; *People v. Mitchell* (1975), 34 Ill. App. 3d 311, 321-22, 340 N.E.2d 226, 234; *People v. Doss* (1975), 26 Ill. App. 3d 1, 16, 324 N.E.2d 210, 221. See also *People v. Maffioli* (1950), 406 Ill. 315, 321-22, 94 N.E.2d 191, 194-95.) Contrary to defendant's assertion, he was proved guilty beyond a reasonable doubt of the burglary of Mrs. Telford's residence. See *People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267, 276-77.

■ Defendant next complains he was denied a fair trial by the introduction of his "mug shot" into evidence. Defendant argues the sign hanging around his neck in the photo revealed that he had had a previous connection with the law prior to the instant burglary charge, which necessarily prejudiced the jury against him. See *People v. Hudson* (1972), 7 Ill. App. 3d 333, 336-37, 287 N.E.2d 297, 301; *People v. Hawkins* (1972), 4 Ill. App. 3d 471, 474-75, 281 N.E.2d 72, 75.

Again we note defendant has waived this issue for appeal by failing to object to the photo's admission at trial and by failing to raise the issue in his post-trial motion. (See *People v. Brents* (1983), 115 Ill. App. 3d 717, 719, 450 N.E.2d 910, 912.) Even if such were not the case, mug shots, including those bearing police legends and dates, are admissible to prove the identity of a defendant. (See *People v. Dean* (1981), 99 Ill. App. 3d 999, 1001, 426 N.E.2d 279, 281; *People v. Wheeler* (1979), 71 Ill. App. 3d 91, 94, 388 N.E.2d 1284, 1286-87; *People v. Mitchell* (1975), 34 Ill. App. 3d 311, 318, 340 N.E.2d 226, 232.) Defendant asserted throughout his trial that Mrs. Telford was mistaken in her identification of him because Thompson committed the offense. The photo from which she made her original identification was relevant, therefore, to show the manner in which the identification was made. See *People v. Dean* (1981), 99 Ill. App. 3d 999, 1001, 426 N.E.2d 279, 281; *People v. Adams* (1974), 22 Ill. App. 3d 665, 668-69, 318 N.E.2d 278, 280-81.

■ A mug shot, with or without a legend, cannot help from being recognized by the average juror. (*People v. Wheeler* (1979), 71 Ill. App. 3d 91, 97, 388 N.E.2d 1284, 1288; *People v. Woodruff* (1978), 62 Ill. App. 3d 949, 954, 379 N.E.2d 907, 911.) Any alteration of the photo to block out the legend would not have altered the essential character of the photo as a "mug shot." But, to assume that defendant was so prejudiced by the admission of his mug shot into evidence as to justify reversal is to engage in pure speculation. The jury not only would have to recognize the arrest date on the legend for what it was, in addition to realizing that the date preceded the date of the in-

stant charges, but also would have to adjudicate defendant's guilt on the basis of this prior arrest rather than on the evidence produced at trial. (See *People v. Warmack* (1980), 83 Ill. 2d 112, 129, 413 N.E.2d 1254, 1262.) The probative value of defendant's mug shot far outweighed any possible prejudicial effect. We find no reversible error. See *People v. Wheeler* (1979), 71 Ill. App. 3d 91, 97-98, 388 N.E.2d 1284, 1289. See also *People v. Maffioli* (1950), 406 Ill. 315, 322, 94 N.E.2d 191, 195; *People v. Brents* (1983), 115 Ill. App. 3d 717, 720, 450 N.E.2d 910, 912. Accord *People v. Ray* (1984), 130 Ill. App. 3d 362, 365-67, 471 N.E.2d 933, 936-37 (fingerprint card with prior arrest date).

■ Defendant next argues he was denied a fair trial when the arresting officer testified defendant remained silent after having been given *Miranda* warnings. The officer stated he picked up defendant and read him his rights. "[H]e didn't have anything to say. And I took him to Marion County Jail." Later, this same officer testified, "I don't remember specifically where he was arrested. But he was picked up and read his rights and he didn't wish to talk to me, so he was taken to the county jail." Defendant argues this testimony was elicited from the officer with the intention that the jury would infer guilt from his silence. We disagree. This testimony was not elicited at all. The prosecutor was questioning the officer with regard to police procedure in defendant's case. Specifically, the prosecutor asked the officer, "Later that day on July 10—did you do anything further with respect to the case?" to which he received the first reply quoted above. The second mention of defendant's silence came in response to the question, "Where did you arrest the defendant?" In neither instance did the prosecutor ask any direct questions pertaining to defendant's silence. The officer volunteered the information on his own. The prosecutor did not follow up with any questions relating to defendant's post-arrest silence but rather moved on to other areas. More importantly, he did not argue any inferences of guilt to be gleaned from defendant's silence nor did he capitalize upon the officer's testimony in closing argument. The jury could not have been influenced by any such passing references to defendant's post-arrest silence. We find no prejudicial error. See *People v. Lindgren* (1982), 111 Ill. App. 3d 112, 117-18, 443 N.E.2d 1129, 1133-34; *People v. Douglas* (1978), 58 Ill. App. 3d 149, 151-52, 373 N.E.2d 1385, 1387-88. See also *People v. Tyllas* (1981), 96 Ill. App. 3d 1, 6-7, 420 N.E.2d 625, 629-30. *Cf. People v. DeBerry* (1977), 46 Ill. App. 3d 719, 721, 361 N.E.2d 632, 634; *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 324-26, 352 N.E.2d 295, 298.

Defendant argues in his fourth point on appeal that he was denied

a fair trial because the prosecutor gave his own unsworn testimony during cross-examination of Thompson and misstated evidence presented at trial during closing argument. While it is improper for a prosecutor to use his personal and official prestige to get before a jury that which amounts to his own unsworn testimony, not subject to cross-examination (see *People v. Ford* (1980), 83 Ill. App. 3d 57, 72, 403 N.E.2d 512, 524), we do not believe that is what occurred in this instance.

■■ ■ Thompson confessed to burglarizing Mrs. Telford's home approximately one month after defendant was arrested for the crime. Shortly after he confessed, Thompson apparently wrote a letter to the prosecutor requesting probation and restitution for the burglary. During cross-examination, the prosecutor asked Thompson one question pertaining to this letter, to which he admitted writing such a letter. No other inquiry was made; no other statements were made. This does not constitute an attempt to get the prosecutor's personal unsworn testimony before the jury. The same is true for those questions concerning Thompson's plea negotiations and what he thought he would serve for confessing to the burglary of Mrs. Telford's residence. The prosecutor was merely trying to impeach Thompson's confession. As for closing argument, the prosecutor discussed why Thompson would confess to a crime he did not commit. The prosecutor focused on the sentence Thompson believed he could receive by confessing as was elicited on cross-examination. There was no misstatement of the evidence. The prosecutor merely commented on Thompson's motivation and credibility, based upon the evidence presented at trial. We find no error in either instance. (See *People v. Collins* (1985), 106 Ill. 2d 237, 269, 478 N.E.2d 267, 281; *People v. Martinez* (1977), 45 Ill. App. 3d 939, 943, 360 N.E.2d 495, 498.) We further find defendant's suggestion that the jury, on the basis of the prosecutor's argument, would convict someone who would actually be punished for burglarizing the home of two elderly women even though that individual did not commit the crime, as opposed to convicting someone who would not receive any punishment who did commit the crime, to be ludicrous, flying in the face of the integrity of the entire judicial system.

■■ Defendant next contends he was denied effective assistance of counsel because defense counsel failed: (1) to file a motion to suppress the suggestive photo identification; (2) to make any effort to prevent defendant's photo from being admitted at trial; (3) to object to inferences made by the prosecutor regarding Thompson's motive for confessing; and (4) to object to the arresting officer's comments pertaining to defendant's post-arrest silence. Looking to the totality of

defense counsel's conduct and the record before us, defendant received effective assistance of counsel.

We have previously ruled in this disposition that the photo array was not unduly suggestive. What suggestiveness it did possess was developed by counsel on cross-examination of Mrs. Telford and on closing argument. We cannot say counsel did not deliberately choose not to file a motion to suppress as a matter of trial tactics in order to better attack Mrs. Telford's in-court identification of defendant. Failure to file a motion to suppress may be an error in judgment, but it does not establish incompetence. *People v. Son* (1982), 111 Ill. App. 3d 273, 285, 443 N.E.2d 1115, 1124. See also *People v. Ortiz* (1981), 96 Ill. App. 3d 497, 503, 421 N.E.2d 556, 560; *People v. Hines* (1975), 34 Ill. App. 3d 97, 100-01, 339 N.E.2d 489, 492.

Defendant also was not denied effective assistance of counsel when defense counsel failed to object to the introduction of defendant's photo because the photo was properly admissible, as previously discussed. This same reasoning applies to defense counsel's failure to object to the prosecutor's inferences pertaining to Thompson's confession. Moreover, we note defense counsel twice objected unsuccessfully to the prosecutor's line of questioning. Finally, counsel's failure to object to the passing reference to defendant's post-arrest silence, which constituted nothing more than harmless error, did not rise to the level of ineffective assistance of counsel.

Looking to the totality of defense counsel's conduct, defendant was not so prejudiced by counsel's errors, if any, as to deprive him of a fair trial. (See *People v. Albanese* (1984), 104 Ill. 2d 504, 525-26, 473 N.E.2d 1246, 1255, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) Defense counsel is not expected to be, nor does due process require that he be, infallible. (*People v. Hines* (1975), 34 Ill. App. 3d 97, 100, 339 N.E.2d 489, 492.) Defendant's trial may not have been free from error, but any such errors did not work to deny defendant a fair trial. See *People v. Reppa* (1982), 104 Ill. App. 3d 1123, 1130, 433 N.E.2d 1091, 1097.

Defendant raises as his last contention that he is entitled to an additional two days' credit against his sentence. As the State concedes this issue, under *People v. Johns* (1984), 130 Ill. App. 3d 548, 474 N.E.2d 739, we find that defendant is entitled to 75 days' credit, rather than the original 73 days' credit entered, against his sentence. 130 Ill. App. 3d 548, 549, 474 N.E.2d 739, 740.

For the aforementioned reasons, we affirm the judgment of the circuit court of Marion County convicting defendant of residential burglary. We remand, however, for the sole purpose of issuing an

amended mittimus to reflect the proper days' credit consistent with this opinion.

Affirmed and remanded.

HARRISON and KASSERMAN, JJ., concur.